# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

American Civil Liberties Union of
Minnesota,

                                                    Civil No. 09-138 (DWF/JJG)

        Plaintiff,

v.

                                                    **MEMORANDUM**
                                                    **OPINION AND ORDER**

Tarek ibn Ziyad Academy; Islamic Relief
USA; Alice Seagren, individually and
in her capacity as Minnesota Commissioner
of Education; the Minnesota Department of
Education; Asad Zaman; Asif Rahman;
Mahrous Kandil; Mona Elnahrawy;
Moira Fahey; and Mohamed Farid,
individually and in their capacities as
Directors of Tarek ibn Ziyad Academy,

        Defendants.
_____

Christopher Amundsen, Esq., Ivan M. Ludmer, Esq., Megan J. McKenzie, Esq., and
Peter M. Lancaster, Esq., Dorsey & Whitney, LLP; and Teresa J. Nelson, Esq., American
Civil Liberties Union of Minnesota, counsel for Plaintiff American Civil Liberties Union
of Minnesota.

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Morhman & Kaardal, counsel for
Defendant Tarek ibn Ziyad Academy, Asad Zaman, Asif Rahman, Mahrous Kandil,
Mona Elnahrawy, Moira Fahey, and Mohamed Faird.

Sarah E. Bushnell, Esq., Kelly & Berens, PA;  and Scott J. Ward, Esq., and Timothy R.
Obitts, Esq., Gammon & Grange, PC, counsel for Defendant Islamic Relief USA.

Kathryn M. Woodruff, Esq., and Tamar N. Gronvall, Esq., Minnesota Attorney General's
Office, counsel for Alice Seagren and the Minnesota Department of Education.
_____

# INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendants Minnesota Department of Education (the "MDE") and Commissioner Alice Seagren (the "Commissioner") (collectively, the "MDE Defendants"); a Motion to Dismiss brought by Islamic Relief USA ("Islamic Relief"); a Motion to Dismiss brought by Tarek ibn Ziyad Academy and its directors, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohammed Farid (collectively, "TIZA"); and a Motion for an Evidentiary Hearing brought by TIZA. For the reasons set forth below, the Court grants in part and denies in part all pending motions to dismiss and denies the motion for an evidentiary hearing as follows:

1. The MDE Defendant's Motion to Dismiss (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART**.

2. Islamic Relief's Motion to Dismiss (Doc. No. 17) is **GRANTED IN PART** and **DENIED IN PART.**

3. TIZA's Amended Motion to Dismiss for Lack of Jurisdiction (Doc. No. 32) is **GRANTED IN PART** and **DENIED IN PART**.

4. Count Three is **DISMISSED** as to all Defendants.

5. All claims are **DISMISSED** as to the MDE.

6. Count Two is **DISMISSED** as to the Commissioner.

7. TIZA's Motion for an Evidentiary Hearing (Doc. No. 29) is **DENIED**.

# BACKGROUND

Plaintiff American Civil Liberties Union of Minnesota ("Plaintiff") is a not-for-profit organization whose stated purpose is to protect the civil liberties guaranteed to Minnesotans by the state and federal constitutions and other state and federal laws. (Compl. ¶ 4.) Plaintiff has 8,000 members in the state of Minnesota. (*Id.*) Plaintiff's members pay income taxes to the United States and income and sales taxes to the state of Minnesota. (*Id.* at ¶5.) TIZA is a charter school organized under Minnesota law as a not-for-profit corporation with campuses in Blaine and Inver Grove Heights, Minnesota. (*Id.* at ¶ 3.) TIZA was established in 2003 under the Minnesota Charter School Law ("MCSL"), Minn. Stat. § 124D.10, and is supported by both state and federal tax funds. (*Id.* at ¶¶ 6, 16.) During the 2008-2009 academic year, TIZA was expected to receive $3.8 million in funding from the state of Minnesota. (*Id.* at ¶ 22.) Islamic Relief is a California not-for-profit organization and is TIZA's sponsor. (*Id.* at ¶ 7.) Islamic Relief and TIZA entered into a Charter School Contract in June 2006. The MDE is a state agency charged with carrying out the MCSL and dispersing state funds. (*Id.* at ¶ 9.) The Commissioner is charged with approval and oversight of charter schools and with certification of schools' entitlement to state funding. (*Id.* at ¶ 8.) Defendant Asad Zaman is Executive Director, trustee, Board Secretary, and Treasurer of TIZA. (*Id.* at ¶ 10.) Mr. Zaman is also the Principal of TIZA's Inver Grove Heights campus. (*Id.*) Defendant Asif Rafman is a trustee and the disbursement authorizer for TIZA. (*Id.* at ¶ 11.) Defendant Mahrous Kandil is a trustee and a member of the board of directors of TIZA. Mr. Kandil is also the principal of TIZA's Blaine campus. (*Id.* at ¶ 12.) Defendants

Mohamed Farid and Moira Fahey are trustees of TIZA and members of TIZA's Board of Directors. (*Id*. at ¶¶ 13, 14.) Defendant Mona Elnahrawy is a member of TIZA's Board of Directors. (*Id*. at ¶ 15.)

The MCSL allows for the formation of charter schools designed to, among other things, improve student learning and encourage the use of different and innovative teaching methods. Minn. Stat. § 124D.10, subd. 1(a). The MCSL requires a charter school to have a sponsor. "The sponsor's authorization for a charter school must be in the form of a written contract signed by the sponsor and the board of directors of the charter school" and must contain certain requirements, including "how the school will comply with" the requirement that the charter school be nonsectarian in its operations. Minn. Stat. § 124D.10, subd. 6 (6) & subd. 8. Before a school is formed, the sponsor must file an affidavit with the commissioner stating, among other things, how it intends to oversee the fiscal and student performance of the charter school and how it intends to comply with the terms of the written contract between the sponsor and the charter school board of directors. Minn. Stat. § 124D.10, subd. 4. The commissioner then either approves or disapproves the creation of the charter school. If approved as a charter school, a school is eligible to receive funds as if it were a traditional school district. Minn. Stat. § 124D.11. The MCSL also allows for a charter school to lease space from a sectarian organization under certain circumstances if the charter school is unable to lease space from a nonsectarian organization. Minn. Stat. § 124D.10, subd. 17.

The "vast majority" of students who attend TIZA are Somali and come from families that practice the Islamic religion. (Def. Islamic Relief's Mem. of Law in Supp.

4

of its Mot. to Dismiss at 2.)  Plaintiff asserts that TIZA advances, endorses, and prefers

the "Muslim religion" over other religions or nonsectarian approaches and fosters

entanglement between government and religion.[1]  (Compl. ¶ 38.)  Plaintiff alleges that

TIZA has close ties with the Muslim American Society of Minnesota ("MAS-MN"), a

not-for-profit corporation that functions as a local affiliate of the National Muslim

American Society, and that TIZA is linked by a complex set of personal, corporate, and

operational relationships with MAS-MN and other religious organizations.  In addition,

Plaintiff alleges that TIZA's campuses are located in facilities owned by religious

institutions.  Plaintiff also alleges that TIZA has permitted, among other things, prayer to

be posted prominently in the school's entryway, Muslim prayer sessions to be held during

school hours, teacher-sanctioned religious material to be posted in classrooms, parent-led

or volunteer-led prayer during class-time, and teacher participation in prayer activities.

(*Id*. at ¶¶ 39, 40.)  In addition, Plaintiff alleges that TIZA endorses Muslim dress codes

and dietary practices and prefers Muslim religious practices through its provision of

school transportation only after a Muslim studies program occurs at the end of the day.

(*Id*. at ¶¶ 41-43.)

---

[1]     TIZA objects to Plaintiff's references to "Muslim," claiming that the term describes a people, not a religion, and suggesting that Plaintiff has failed to identify a specific religion of which it complains.  Plaintiff explains that it uses the word "Muslim" as an adjective to mean "of or relating to Islam, its followers, or their culture."  For purposes of this motion, the Court accepts Plaintiff's current use of the word "Muslim," intending no disrespect to any party.

In this litigation, Plaintiff seeks declaratory and injunctive relief against Defendants, alleging that the operation of TIZA violates the Establishment Clause of the First Amendment to the United States Constitution, the Minnesota Constitution, and the MCSL. In particular, Plaintiff alleges that the operation and funding of TIZA advances the Muslim religion.[2]

## DISCUSSION

## I. Motion to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion

---

[2]    The MDE moved to dismiss on the grounds of sovereign immunity. Plaintiff does not oppose that motion and indicated at the hearing on this matter that it planned to drop its claims against the MDE and to clarify that Counts Two and Three do not apply to the Commissioner. Thus, the MDE's motion is granted insofar as it seeks to dismiss all counts against the MDE. In addition, the only remaining claim against the Commissioner is Count One, the Establishment Clause claim, which is asserted against the Commissioner in her official capacity only. The Court notes that the MDE could have chosen to waive the defense of sovereign immunity and participated in the merits of the lawsuit, but for reasons that are unclear the Court, did not do so.

brought pursuant to Rule 12(b)(6). *Id.* In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of Rule12(b)(6). *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964–65. As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555.) In

sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

The three pending motions to dismiss raise overlapping issues. The Court will discuss the issues separately below.

## B. Standing

All Defendants have moved to dismiss on the grounds that Plaintiff lacks standing to bring this action. Article III of the Constitution limits the judicial power of the United States to actual cases and controversies. *Hein v. Freedom from Religion Found., Inc.*, 127 S. Ct. 2553, 2555 (2007). To satisfy Article III standing requirements, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id*. at 2555-56 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

Plaintiff claims that it has association standing to bring the suit on behalf of its members. An association has standing when (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). No party disputes that the second and third factors have been met. The sole issue with respect to standing is whether Plaintiff's members would otherwise have standing to sue in their own right. Plaintiff asserts that

its members meet the first requirement of individual standing based on its members' status as state and federal taxpayers.[3]

Generally, the interest of a taxpayer seeking to ensure that Treasury funds are spent in accordance with the Constitution does not give rise to the type of redressable injury required for Article III standing. *Hein*, 127 S.Ct. at 2556. There is a narrow exception, however, to this general prohibition against taxpayer standing. *See Flast v. Cohen*, 392 U.S. 83 (1968). The exception provides that a taxpayer will have standing to invoke federal judicial power when that taxpayer "alleges that congressional action under the taking and spending clause is in derogation of the Establishment Clause." *Id*. at 105-06. *See also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 347 (2006); *Minnesota Fed'n of Teachers v. Randall*, 891 F.2d 1354, 1356 (8th Cir. 1989) (recognizing that *Flast* established taxpayer standing for the challenge of establishment clause claims).[4] To establish taxpayer standing under *Flast*, a taxpayer must establish a "logical nexus

---

[3]      Islamic Relief argues that taxpayer standing is inapplicable to Count Three (statutory claim for a violation of the MCSL) and that Plaintiff lacks standing to bring that claim for lack of an alleged injury. At the hearing on this matter, Plaintiff indicated that it intended to drop Count Three, but noted that several of the allegations in that count are appropriately rolled into the arguments about entanglement. The Court dismisses Count Three.

[4]      Plaintiff argues that post-*Flast* decisions do not change the standing rules for state taxpayer standing and that state taxpayer standing is less stringent than federal taxpayer standing as explained in *Flast*. The Court, however, need not decide whether or not a single standing requirement exists for both state and federal taxpayers because the Court concludes that Plaintiff satisfies the more stringent *Flast* nexus test and, therefore, has standing to bring this suit.

between the status asserted and the claim sought to be adjudicated." *Flast*, 392 U.S. at 102. In particular, *Flast* set forth a two-part test. First, "the taxpayer must establish a logical link between that status and the type of legislative enactment attacked." *Id*. at 102. Second, "the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged." *Id.* at 102-03.

In *Flast*, taxpayers challenged the distribution of federal funds to religious schools under the Elementary and Secondary Education Act. *Flast*, 392 U.S. at 85. The Court held that the taxpayer satisfied both nexuses to support their claim of standing. *Id.* at 103. The constitutional challenge in *Flast* involved an exercise by Congress of its power to spend for the general welfare, and the challenged federal program involved a substantial expenditure of tax funds. *Id*. In addition, the taxpayers alleged that the challenged expenditures violated the Establishment and Free Exercise Clauses of the First Amendment. *Id*.

Here, Plaintiff asserts that it has standing under the *Flast* test, particularly in light of the Supreme Court's subsequent decision in *Bowen v. Kendrick*, 487 U.S. 589 (1988). In *Kendrick*, taxpayers asserted that the Adolescent Family Life Act ("AFLA") violated the Establishment Clause both on its face and "as applied." The AFLA authorized grant money to institutions capable of providing certain services to adolescents and required that potential grantees describe how they would involve organizations, including religious organizations, in the funded programs. *Id*. at 596. The Supreme Court ruled that the AFLA did not violate the Establishment Clause on its face, but remanded the case to the district court to determine whether the AFLA violated the Establishment Clause

"as applied." *Id.* at 622. The Supreme Court in *Kendrick* explained that if the district court determined "that grants are being made by the Secretary [of Health and Human Services] in violation of the Establishment Clause, an appropriate remedy would be to require the Secretary to withdraw approval of such grants." *Id.* The Supreme Court further explained that the taxpayer's challenge was not a challenge to an executive action "simply because the funding authorized by Congress has flowed through and been administered by the Secretary." *Id.* at 619.

Here, Plaintiff attacks a state spending program, in particular the disbursement of public funds to TIZA under the MCSL. Specifically, Plaintiff asserts that tax revenues "are used to support the governmental Defendants and the charter school" and that the Commissioner and the MDE "have certified and disbursed taxpayer funds for the school despite its unconstitutional promotion and endorsement of religion." (Compl. ¶¶ 5, 52.)

Thus, Plaintiff challenges the MCSL "as applied" to TIZA. Further, the MCSL authorizes the expenditure of legislatively appropriated public funds to operate TIZA, which Plaintiff alleges is a pervasively sectarian school. Under the MCSL, the Commissioner has the power to approve the school sponsor's authorization of the charter school, which in turn entitles the school to receive public funding. Because the Commissioner's power to authorize a charter school under the MCSL triggers public funding, the MCSL is inextricably connected to the congressional power to tax and spend. *See Kendrick*, 487 U.S. at 619. Thus, Plaintiff has sufficiently alleged a link between its taxpayer status and both a congressional act (the MCSL) and the constitutional limitation imposed by the Establishment Clause. Specifically, Plaintiff has

met the first prong by alleging that the Commissioner caused taxpayer funds to be distributed under state funding statutes and the second prong by alleging that those funds were distributed to a pervasively sectarian group in violation of the Establishment Clause. Accordingly, the Court concludes that Plaintiff has standing to assert its Establishment Clause claims.

Defendants argue that Plaintiff cannot meet the stringent taxpayer standing requirements under the Supreme Court's decision in *Hein*. In particular, Defendants assert that Plaintiff does not challenge the appropriation of taxes for the support of charter schools by the legislature; instead, it attacks the discretionary expenditure of those funds by the state executive branch. Defendants further argue that under *Hein*, there is no standing for such a challenge. In *Hein*, plaintiff taxpayers challenged the Executive Branch's use of Congressional money to fund conferences put on by the President's Faith-Based and Community Initiatives program. *Hein*, 127 S. Ct. at 2559-60. This program, new executive department centers, and a White House Office of Faith-Based and Community Initiatives were created by executive order. *Id*. The centers were tasked with the job of ensuring that faith-based groups could compete for federal financial support. *Id*. No congressional legislation specifically authorized the creation of the new office or appropriated money for the new office's activities. *Id*. Instead, the activities of the new office were funded through general Executive Branch appropriations. *Id*. The plaintiffs in *Hein* alleged, among other things, that speeches given by executive branch officials that included "religious imagery" and praised "the efficacy of faith-based programs in delivering social services" violated the Establishment Clause. *Id*. The Court

held that the plaintiff taxpayers did not have standing to challenge the conferences because the challenged expenditures were not "expressly authorized or mandated by any specific congressional enactment." *Id*. at 2568. The Court explained that extending the *Flast* exception to the general prohibition on taxpayer standing to executive expenditures would "raise serious separation-of-powers concerns." *Id*. at 2570. The Court in *Hein* also distinguished its decision in *Kendrick*, explaining that *Kendrick* involved a program of disbursement of funds that Congress had created, authorized, and mandated. *Id*. at 2567. The Court further explained that the plaintiffs in *Hein* could not "paint their lawsuit as a *Kendrick* style as-applied challenge," because they could not cite to a statute whose application they challenged. *Id*.

The Court concludes that *Hein* does not preclude the existence of taxpayer standing in this case. Defendants assert that under *Hein*, there is no taxpayer standing to challenge executive expenditure of general legislative appropriations and to satisfy *Hein*, a plaintiff must show that the challenged statute contains a legislative directive, mandate, or approval of the provisions of funds to a religious entity. To the extent that Defendants suggest that a statute must mention religion on its face, the Court disagrees. Funding under a legislative enactment that does not specifically mention religion is not necessarily a general appropriation. *Hein* did not overrule *Flast* or *Kendrick*. Accordingly, taxpayers can still establish standing to challenge an otherwise constitutionally valid statute "as applied" so long as they satisfy *Flast*'s nexus test. Further, unlike the plaintiff in *Hein* who challenged an executive action, Plaintiff here challenges the application of a state legislative act—the MCSL. The MCSL authorizes (or triggers) the use of taxpayer funds

to operate charter schools by triggering funding under Minn. Stat. § 126C.[5] The fact that the Commissioner has the responsibility to choose or authorize charter schools (which then in turn receive funding) does not mean that Plaintiff here is challenging an executive action. *See Kendrick*, 487 U.S. at 619.[6]

The Court's decision today underscores the importance of taxpayer standing, particularly when there is no other party to sue. *See, e.g.*, *Friedmann v. Sheldon Cmty. School Dist.*, 995 F.2d 802, 804 (8th Cir. 1993). In *Friedmann*, plaintiff taxpayers sought an injunction to prevent school districts from permitting graduating students to read an invocation or benediction at their graduation ceremonies. *Id.* at 803. While the suit involved a challenge to an Iowa statute that provided disbursement of funds from the State General Fund to school districts in the state, the Eighth Circuit noted that the plaintiffs made no allegation that the state was spending any money on the invocations or benedictions. *Id.* at 803. The Eighth Circuit concluded that the plaintiffs had not established taxpayer standing. The Eighth Circuit also stated that "the doctrine of

---

[5]     In addition, the MCSL contemplates the possibility that a religious entity would receive money under the statute, as it allows a charter school to lease space from a sectarian organization under certain circumstances. Minn. Stat. § 124D.10, subd. 17.

[6]     In *Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406 (8th Cir. 2007), the Eighth Circuit, citing *Hein*, rejected a challenge to taxpayer standing where "the Iowa legislature made specific appropriations from public funds for a values-based treatment program." 509 F.3d at 420. While the Eighth Circuit determined that standing was established in that case, it did not explore the boundaries of taxpayer standing or determine that the level of specificity in the Iowa legislature's appropriation is required in all cases to establish standing. The parties agree that the Eighth Circuit has not applied *Hein* to facts analogous to this case.

taxpayer standing is of greatest importance when there is no other party to sue" and noted that "affected students or their parents could easily bring a challenge to the invocation in question." *Id*. Here, TIZA students or their parents could challenge the operation and funding of TIZA as being a violation of the Establishment Clause. But unlike in *Friedmann*, which involved many public school districts, the challenged funding here is to a single charter school which, by the admission of Defendants, is attended by choice largely by Somali students who practice the Islamic Religion. It seems unlikely that a parent or student of TIZA, who presumably attends the school because of its particularized program, would challenge the program of choice. At a minimum, the circumstances of this particular case create a narrow field of potential plaintiffs. The Court need not decide under what circumstances a suit could be raised by a hypothetical plaintiff, however, because the Court concludes, independently of whether or not there are other potential plaintiffs, that Plaintiff has standing.[7]

### C. Exhaustion of Administrative Remedies

TIZA asserts that this Court lacks subject matter jurisdiction over Plaintiff's complaint because Plaintiff alleges no facts showing it engaged in the MDE's administrative process, and therefore that Plaintiff has not exhausted its administrative remedies. TIZA further asserts that the MDE is currently reviewing several of Plaintiff's

---

[7]    If the ACLU lacked standing to bring this action, it appears from a practical standpoint that there would be few other potential plaintiffs. Such a result, if this were true, might well require a parent or other third party who objects to the allegedly religious program at TIZA to enroll a child at TIZA for the purpose of instituting a legal challenge.

allegations of Establishment Clause violations, namely the dress code for girls, dress code for teachers, dietary selections, and school calendar.

Plaintiff brings this suit under 42 U.S.C. § 1983. (Compl. ¶ 2.) Generally, a plaintiff who seeks redress via § 1983 for violation of independently existing constitutional rights, even where the same set of facts gives rise to a cause of action for a statutory violation, need not exhaust administrative remedies. *Plough v. West Des Moines Cmty. School Dist.*, 70 F.3d 512, 515 n.5 (8th Cir. 1995); *Doe v. Todd County School Dist.*, Civ. No. 05-3043, 2006 WL 3025855, at *4 (D.S.D. 2006). For this reason, TIZA's exhaustion argument is unavailing.

### D.    Abstention

TIZA asserts that the Court should abstain from the exercise of federal jurisdiction under the doctrines of *Younger v. Harris*, 401 U.S. 37 (1971) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). In particular, TIZA contends that it is a target of on-going state MDE administrative actions and that this action is a parallel proceeding aimed at circumventing the administrative process. TIZA also asserts that the MDE has competently applied federal and state law governing religious entanglement at TIZA and other charter schools. Further, TIZA asserts that abstention is appropriate so as to avoid disruption of the MDE administrative process and interference with a state regulatory scheme. In particular, TIZA argues that the possibility of conflicting decisions between this Court and the state administrative agency proceedings or the Minnesota appellate courts would render the MDE's administrative process meaningless. TIZA also argues

that allowing this case to proceed before this Court would encourage other litigants to bypass the MDE's administrative process.

A court may only abstain from hearing a case in "extraordinary and narrow circumstances where it would clearly serve an important countervailing interest." *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 826 (8th Cir. 1990) (quotation omitted). *See also Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005). Moreover, abstention is a matter of discretion and "federal courts are not required to abstain when the criteria of abstention are met." *Bilden*, 921 F.2d at 826. "*Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state law." *Bilden*, 921 F.2d at 825-26. *Younger* abstention applies when a state judicial proceeding is currently proceeding, involves an important state interest, and affords the plaintiff an adequate opportunity to raise constitutional concerns. *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998); *Eidson v. State of Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007).

The Court declines to abstain from the exercise of federal jurisdiction. First, TIZA has not demonstrated that this case raises "extraordinary" circumstances warranting such abstention. Indeed, while there are ongoing administrative proceedings pending on some of the same issues presented by this case, TIZA has not demonstrated that the proceedings are part of a complex regulatory scheme so as to render abstention appropriate. In addition, there has been no showing that Plaintiff has an administrative or

judicial forum within the administrative framework in which to raise its constitutional concerns. Therefore, there has been no showing that Plaintiff would be able to appeal any MDE determination. Finally, there has been no showing that all of the constitutional issues presented in this case are currently being addressed by a parallel proceeding.

### E. Mootness

TIZA asserts that the Court lacks subject matter jurisdiction over moot claims and that an injunction in this action is not necessary because it has ended some of the actions about which Plaintiff complains. TIZA asserts that it has corrected, among other things, complaints about the posting of prayers in the entryway, permitting prayer sessions during school, and teacher-sanctioned religious material.

The Court concludes, however, that TIZA's mootness argument fails for two primary reasons. First, TIZA does not contend that it has corrected all of the alleged Establishment Clause violations. For example, TIZA does not address whether it has halted the allegedly objectionable practice of requiring a religiously based dress-code. Plaintiff's Establishment Clause claim centers on the assertion that TIZA's practices in combination establish a pervasively sectarian atmosphere for the purpose of promoting a single religion. In order to fairly analyze Plaintiff's claim, a wide range of facts surrounding each of the allegedly impermissible practices must be considered. Because Islamic Relief's mootness argument is closely tied to the merits of the case, it cannot be fairly presented until discovery has been conducted. Second, even if TIZA could establish at this early stage that it has stopped all of the alleged religious practices, it would still be unable to demonstrate that Plaintiff's claims are moot because of

"voluntary cessation."  "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation omitted).  To demonstrate that a case has been mooted by TIZA's "voluntary cessation," TIZA must meet the "heavy burden of persuading" the Court that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id*.  TIZA asserts that it has self-corrected certain practices before the filing of the complaint.  However, TIZA has not sufficiently demonstrated that all of the allegedly wrongful behavior could not reasonably be expected to recur.  For the above reasons, the Court declines to dismiss Plaintiff's claims on mootness grounds.

F.     **Failure to State a Claim under Rule 12(b)(6)**

Islamic Relief asserts that Plaintiff's Complaint fails to state a claim for relief under Rule 12(b)(6) because it fails to plead the necessary elements that Islamic Relief is a "state actor" and because Islamic Relief is not a "state actor."  Both Islamic Relief and TIZA assert that the Complaint fails to allege any actual constitutional or statutory violations against Islamic Relief or TIZA.

1.     **State Action**

Counts One and Two of Plaintiff's Complaint assert that Islamic Relief, as TIZA's sponsor, violated both federal and state Establishment Clauses.  Plaintiff asserts these counts under 42 U.S.C. § 1983.  Islamic Relief now moves to dismiss those counts because Plaintiff has failed to sufficiently allege "state action" and because its role as

sponsor does not constitute "state action."  Specifically, Islamic Relief argues that it performs only a limited role as sponsor, making it impossible for it to violate the Establishment Clause.  Further, Islamic Relief argues that its limited role as sponsor does not give rise to the necessary entwinement to be considered a "state actor."

"[A] private party may be held liable on a § 1983 claim, if 'he is a willful participant in joint action with the State or its agents.'" *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  To survive a motion to dismiss, a plaintiff must allege "that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Id*. at 451.  In Section 1983 cases against private actors, courts consider whether "the challenged action is fairly attributable to the state." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).  A private party may be considered a state actor if it performs a function traditionally exclusively reserved to the state. *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 584 (8th Cir. 2006), or if it is entwined with public institutions. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc'n*, 531 U.S. 288, 299 (2001).

Charter schools, and in particular TIZA, provide free, public education to Minnesota students.  Moreover, the MCSL explicitly states that "[a] charter school is a public school and is part of the state's system of public education." Minn. Stat. § 124D.10, subd. 7.  Thus, TIZA is a state actor. *See, e.g.*, *Reister v. Riverside Cmty. Sch.*, 257 F. Supp. 2d 968 (S.D. Ohio 2002).

Plaintiff alleges that Islamic Relief is TIZA's sponsor; that Islamic Relief is statutorily required to monitor and evaluate the fiscal and student performance of TIZA;

that Islamic Relief authorized TIZA for the MDE; that Islamic Relief, along with TIZA, has set TIZA's policies that endorse a religion; and that Islamic Relief failed to ensure that TIZA did not promote a particular religion. Plaintiff also seeks a declaration that the agreement between Islamic Relief and TIZA is null and void. These allegations, if established as true after discovery, could lead to the conclusion that there was a mutual understanding between Islamic Relief and TIZA. In addition, the allegations, if born out in discovery, could show that Islamic Relief performs functions traditionally provided exclusively by the state and that MDE and TIZA are entwined with Islamic Relief.

While Islamic Relief is a private corporation, it is also TIZA's sponsor and is responsible for providing certain oversight functions, namely fiscal and student performance reporting requirements. Plaintiff asserts that these functions would normally be performed by a school district or school board if TIZA was not a charter school. A management company charged with oversight and management functions of a charter school "may properly be viewed as having engaged in state action, despite being a private corporation." *Scaggs v. New York Dept. of Educ.*, No. 06-CV-0799, 2007 WL 1456221, at *13 (E.D. N.Y. May 16, 2007) (agreeing with "the district courts that have held, since *Rendell-Baker*, that claims addressing the nature and quality of education received at charter schools may be properly brought against such schools and their management companies under Section 1983"); *Reister*, 257 F. Supp. 2d at 972.

In addition, Plaintiff has adequately alleged facts to show that Islamic Relief is entwined with the MDE and TIZA. Private action may be fairly attributed to the State when the government is entwined with the private organization's management or control

*or* where a private organization is entwined with government policies. *See Brentwood*, 531 U.S. at 297. Here, Plaintiff has pled facts showing that Islamic Relief is entwined with government policies. For example, Islamic Relief filed an affidavit with the Commissioner stating its intent to authorize a charter school and specifying the terms of the authorization, such as how Islamic Relief intends to monitor the school's fiscal and student performance, and how it will ensure compliance with the written contract between it and TIZA. In addition, Islamic Relief could not enter into its contract with TIZA until the Commissioner approved and, once approved, Islamic Relief was required to monitor and evaluate the fiscal and student performance of the school and to prepare and submit audit reports to the Commissioner.

For the above reasons, the Court concludes that Plaintiff's allegations sufficiently plead the elements of a "state action" so as to survive Islamic Relief's motion to dismiss.

## 2. Failure to Allege a Constitutional or Statutory Violation[8]

Both Islamic Relief and TIZA assert that the Complaint fails to state a claim for a constitutional or statutory violation against each of them. TIZA contends that the Establishment Clause claims must be dismissed under Rule 12(b)(6) because none of the asserted violations, such as TIZA's dress code for girls and female teachers, school menu, school calendar, and circumstances under which TIZA was created, implicate the Establishment Clause. Islamic Relief contends that the Complaint does not contain any

---

[8] As explained above, Plaintiff's claim for a statutory violation (Count Three) is dismissed.

specific factual allegations regarding any of Islamic Relief's conduct that would lead to liability on its part. Further, Islamic Relief asserts that the Charter School Statute, the MCSL, TIZA's Articles of Incorporation, and other public documents all belie the allegations of the Complaint.[9]

Plaintiff asserts that TIZA's practices, taken together, establish a pervasively sectarian atmosphere for the purpose of promoting a single religion. The issues raised in both TIZA's and Islamic Relief's Rule 12(b)(6) motions are factual in nature and are not appropriately resolved at this stage in the litigation. For example, TIZA argues that Plaintiff conflates the uniform-dress code with religious entanglement and that Plaintiff has failed to explain how a conservative dress code has the effect of promulgating religion. However, whether or not TIZA's dress code involves religious entanglement requires a factual inquiry into the particulars and reasons for the dress code. In addition, TIZA asserts that it has honored certain requests for religious accommodation and that in honoring such requests, it is not endorsing religion. However, this inquiry also involves fact issues not appropriately resolved at this stage of the litigation. Similarly, Islamic Relief argues, for example, that the Charter School Contract demonstrates that Islamic Relief was not endorsing a religious point of view because TIZA made representations in that contract that the charter school would be nonsectarian. In addition, Islamic Relief

---

[9]     Islamic Relief also asserts, in a footnote, that it is immune from civil liability under Minn. Stat. § 124D.10, subd. 25(c). Islamic Relief's citation to that statute, with no reasoned argument of how it applies, is not enough to demonstrate that IRUS is immune from liability for alleged constitutional violations.

asserts that Plaintiff's Complaint must be dismissed because Islamic Relief, as a sponsor, had no role in setting school policies that could be construed as endorsing religion. Again, whether or not Islamic Relief played a role in the allegedly sectarian operations of TIZA is a factual inquiry, and the role and importance of the Charter School Contract will be just one part of that inquiry.

The Court also notes that, at least with respect to TIZA's motion, there are several alleged sectarian practices, such as TIZA's busing schedule, that TIZA does not address. That not all allegedly sectarian practices and policies are addressed underscores the premature nature of TIZA's motion. It is inappropriate, at this early stage of the litigation, to dismiss Plaintiff's Establishment Clause claim, particularly because it requires an analysis of *all* the allegedly impermissible religious practices together.

For all of the above reasons, the Court concludes that the Establishment Clause violations asserted against both TIZA and Islamic Relief are sufficient so as to survive the pending motions to dismiss under Rule 12(b)(6).

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

8.     The MDE Defendant's Motion to Dismiss (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART**.

9.     Islamic Relief's Motion to Dismiss (Doc. No. 17) is **GRANTED IN PART** and **DENIED IN PART.**

10.     TIZA's Amended Motion to Dismiss for Lack of Jurisdiction (Doc.

No. 32) is **GRANTED IN PART** and **DENIED IN PART**.

   11.   Count Three is **DISMISSED** as to all Defendants.

   12.   All claims are **DISMISSED** as to the MDE.

   13.   Count Two is **DISMISSED** as to the Commissioner.

   14.   TIZA's Motion for an Evidentiary Hearing (Doc. No. 29) is

**DENIED**.

Dated:  July 21, 2009                          s/Donovan W. Frank
                                                        DONOVAN W. FRANK
                                                        United States District Judge