UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

American Civil Liberties Union of
Minnesota,

          Civil No. 09-138 (DWF/JJG)

      Plaintiff,

v.

          MEMORANDUM
          OPINION AND ORDER

Tarek ibn Ziyad Academy; Islamic Relief
USA; Alice Seagren, individually and
in her capacity as Minnesota Commissioner
of Education; Asad Zaman; Asif Rahman;
Mahrous Kandil; Mona Elnahrawy;
Moira Fahey; and Mohamed Farid,
individually and in their capacities as
Directors of Tarek ibn Ziyad Academy,

      Defendants.

_____

Christopher Amundsen, Esq., Ivan M. Ludmer, Esq., and Peter M. Lancaster, Esq., Dorsey & Whitney, LLP; and Teresa J. Nelson, Esq., American Civil Liberties Union of Minnesota, counsel for Plaintiff American Civil Liberties Union of Minnesota.

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Morhman & Kaardal, counsel for Defendant Tarek ibn Ziyad Academy, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohamed Farid solely, with respect to these defendants' asserted Counterclaims.

Shamus P. O'Meara, Esq., and Mark R. Azman, Esq., Johnson and Condon, PA, counsel for Defendant Tarek ibn Ziyad Academy, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohamed Faird, as to all claims asserted against these Defendants.

Sarah E. Bushnell, Esq., and Max H. Kiely, Esq., Kelly & Berens, PA;  and Scott J. Ward, Esq., and Timothy R. Obitts, Esq., Gammon & Grange, PC, counsel for Defendant Islamic Relief USA.

Kathryn M. Woodruff and Tamar N. Gronvall, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Alice Seagren.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss Counterclaims brought by Plaintiff American Civil Liberties Union of Minnesota ("Plaintiff"). Plaintiff seeks to dismiss all Counterclaims brought by Defendants Tarek ibn Ziyad Academy and its directors, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohammed Farid (collectively referred to as "TIZA"). For the reasons set forth below, the Court grants Plaintiff's motion.

## BACKGROUND

The facts of this case are more fully set forth in the Court's July 21, 2009 Order and are summarized briefly here. TIZA was established in 2003 under the Minnesota Charter School Law ("MCSL"), Minn. Stat. § 124D.10, and is supported by both state and federal tax funds. During the 2008-2009 academic year, TIZA was expected to receive $3.8 million in funding from the state of Minnesota. The MCSL allows for the formation of charter schools designed, among other things, to improve student learning and encourage the use of different and innovative teaching methods. Minn. Stat. § 124D.10, subd. 1(a). A charter school approved under the MCSL is eligible to receive funds as if it were a traditional school district. Minn. Stat. § 124D.11.

Plaintiff brought this action against Defendants seeking declaratory and injunctive relief based on its allegations that the application of the MCSL and related state education funding statutes, and TIZA's use of public funds, violates the Establishment Clause of the First Amendment to the United States Constitution and the Minnesota Constitution. (First Am. Compl. ¶¶ 1, 66.) In addition, Plaintiff asserts that "TIZA's operation with

and leasing of space from Muslim organizations and the resulting transfer of funds to such Muslim organizations through excessive lease payments and other transfers also violates the Establishment clauses." (*Id.* ¶ 1.) Plaintiff contends that "TIZA advances, endorses, and prefers Islam over other religions or nonreligious approaches in connection with school activities and fosters entanglement between government and religion." (*Id.* ¶ 47.) Plaintiff also alleges that TIZA has close ties with the Muslim American Society of Minnesota ("MAS-MN"), a not-for-profit corporation that functions as a local affiliate of the National Muslim American Society, and that TIZA is linked by a complex set of personal, corporate, and operational relationships with MAS-MN and other religious organizations. (*Id.* ¶¶ 18, 40.) In addition, Plaintiff alleges that TIZA's campuses are located in facilities owned by religious entities. Plaintiff also contends that TIZA has permitted, among other things, prayer to be posted prominently in the school's entryway, prayer sessions to be held during school hours, teacher-sanctioned religious material to be posted in classrooms, parent-led or volunteer-led prayer during class-time, and teacher participation in prayer activities. (*Id.* at ¶ 49.) In addition, Plaintiff alleges that TIZA endorses Islamic dress codes and dietary practices and prefers Islamic religious practices through its provision of school transportation only after an Islamic studies program occurs at the end of the day. (*Id.* at ¶¶ 50-52.)

In its Answer to First Amended Complaint, Affirmative Defenses and Counterclaims ("Counterclaims"), TIZA alleges five counterclaims against Plaintiff: (1) business defamation; (2) tortious interference with contractual relationships with sponsor; (3) tortious interference with contractual relationships with parents of students;

3

(4) tortious interference with contractual relationships with employees; and (5) tortious interference with prospective contractual relationships.  TIZA asserts that it has been damaged and seeks an award in excess of $100,000 for each count.

The allegations supporting each of TIZA's counterclaims are based on comments made by Plaintiff outside of the current litigation.  Specifically, TIZA complains about the following comments made by Plaintiff's executive director, Chuck Samuelson:

> "[TIZA is] a theocratic school.  It is as plain as the substantial nose on my face."

(Decl. of Erick G. Kaardal ("Kaardal Decl.") ¶ 3, Ex. F.)

> "TIZA has received millions of dollars of taxpayer money to support what is, in essence, a private religious school."

(Kaardal Decl. ¶ 3, Ex. G.)

> "This is in many respects—almost all respects—a religious school, like a private religious school, except for one key thing:  There's state money going in there."

(Kaardal Decl. ¶ 3, Ex. H.)

> "This is not a sectarian school that focuses on Middle Eastern culture.  This is a pervasively Muslim school that teaches religion."

(Kaardal Decl. ¶ 3, Ex. I.)

> "Minnesotans are not interested in having their tax dollars go to fund sectarian schools . . . .  The money's going to the mosque.  It's all the same thing, the school is the mosque which is the property owner."

(Kaardal Decl. ¶ 3, Ex. J.)

> "The school exists within the mosque."

(Kaardal Decl. ¶ 3, Ex. K.)

> "Samuelson said the school has used some government aid money to pay rent to holding companies, which then funneled it to the Muslim American Society of Minnesota and Minnesota Education Trust, a group that the ACLU says is a non-profit that also promotes Islam. The school and the society were incorporated on the same day by the same person, which creates a conflict of interest. 'They created legal fictions, but it's the same organization,' Samuelson said."
>
> . . .
>
> "Samuelson said the school was violating that law because the Blaine campus wasn't built as a school, because TIZA made no apparent attempt to rent from a non-profit organization or commercial entity, and because there was apparently no review of the lease by either the state Department of Education or the state Department of Administration."
>
> . . .
>
> "[Samuelson] said the school . . . requires students and staff to dress in attire that conform (sic) to Islamic religion."
>
> . . .
>
> "[Samuelson] also said the school has issued a handbook instructing staff to not discuss what goes on at the school. 'You cannot have a broad secrecy oath' in a school funded with public dollars, Samuelson said."

(Kaardal Decl. ¶ 3, Ex. L.)

> "The problem with TiZA, Samuelson explains, is that the same people ran the school *and* owned the building—an arrangement prohibited by the charter school law. 'Hence the need for these shell corporations,' Samuelson says. 'The issue with TiZa, frankly, was the incredible commingling of church and state. It's a theocratic school. It is as plain as the substantial nose on my face.'"

(Kaardal Decl. ¶ 3, Ex. F.)[1]

---

[1] TIZA acknowledges that it did not specify the comments outlined above in its Counterclaims. Instead, the only statement specifically described in TIZA's Counterclaims is the statement by Samuelson that TIZA is "a theocratic school . . . as

(Footnote Continued on Next Page)

5

By making these statements, TIZA contends that Plaintiff defamed TIZA (Count One), tortiously interfered with the contractual relationship between TIZA and its sponsor Islamic Relief (Count Two), tortiously interfered with TIZA's contracts with parents of the children attending TIZA (Count Three), tortiously interfered with TIZA's contractual relationships with staff (Count Four), and tortiously interfered with prospective contractual relationships. Plaintiff now moves to dismiss all of TIZA's counterclaims.

## DISCUSSION

**I.      Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City*

---

(Footnote Continued From Previous Page)

plain as the substantial nose on my face." (Counterclaims ¶ 4.) TIZA also alleges generally in its Counterclaims that Plaintiff made "other defamatory statements with actual malice." (Counterclaims ¶¶ 4, 5.) Plaintiff urges the Court to ignore the allegations of "other defamatory statements" because defamatory statements must be set out verbatim. In light of the Court's decision herein on the viability of TIZA's defamation claim, which would fail regardless of whether the Court considers one or all of the above alleged statements, the Court need not decide whether the "other defamatory statements" are properly before the Court.

*of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555.)  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

**II.     Defamation**

To survive a motion to dismiss on its defamation claim, TIZA must plead:  (1) a false and defamatory statement; (2) publication of that statement to a third party; and (3) harm to TIZA's reputation.  *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003).  Plaintiff contends that, as a public entity, TIZA cannot assert a defamation claim.  Alternatively, Plaintiff argues that Samuelson's statement is not defamatory or otherwise actionable, and that the Strategic Lawsuits Against Public Participation statute,

7

Minn. Stat. §§ 554.01, *et seq*. (the "Anti-SLAPP statute") protects Samuelson's speech. TIZA asserts that it has adequately pled the elements of defamation, namely that Samuelson made the above statements to third parties, that the statements are false, and that they tend to harm TIZA's reputation in the community.

### A.   TIZA as a Public Entity

As a threshold matter, Plaintiff contends that as a public entity, TIZA cannot sue for defamation or related claims under *New York Times Co. v. Sullivan*, 376 U.S. 254, 291 (1964), and its progeny.  A governmental body may not sue for defamation.  *See New York Times*, 376 U.S. at 292.  The United States Supreme Court in *New York Times* explained that "[f]or good reason, no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence."  *Id*. at 292 (quoting *City of Chicago v. Tribune Co.*, 139 N.E. 86, 88 (Ill. 1923)).  *Accord Edgartown Police Patrolmen's Ass'n v. Johnson*, 522 F. Supp. 1149 (D. Mass. 1981) ("It is well-established that a governmental body may not sue for libel.") (citing *New York Times*); *City of Chicago v. Tribune Co.*, 139 N.E. at 91 (affirming judgment for defendant newspaper publisher on the ground that a city cannot maintain an action for libel); *City of Philadelphia v. Washington Post Co.*, 482 F. Supp. 897, 898-99 (E.D. Pa. 1979) ("The City cannot maintain an action for libel on its own behalf.  A governmental entity is incapable of being libeled.").  "Public debate must not be inhibited by the threat that one who speaks out on social or political issues may be sued by the very governmental authority which he criticizes." *Edgartown Police Patrolmen's Ass'n*, 522 F. Supp. at 1152 (citing *New York Times*, 376 U.S. at 292).

8

TIZA does not appear to dispute that public schools cannot sue for defamation, but contends that TIZA, as a non-profit corporation in the business of running a public charter school, is a separate legal entity and not part of the government. While it is true that TIZA is set up as a non-profit corporation, it is apparent that TIZA incorporated itself as such in order to be approved as a public charter school under the MCSL. Under the MCSL, charter schools, including TIZA, provide free, public education to Minnesota students. The MCSL explicitly states that "[a] charter school is a public school and is part of the state's system of public education." Minn. Stat. § 124D.10, subd. 7. Under the MCSL, TIZA operates by law as a public school. Indeed, TIZA admits as much, explaining that "TIZA is a Minnesota non-profit corporation in the business of running a public charter school, not a private school." (Mem. of TIZA in Opp. to Pl.'s Mot. to Dismiss at 31.) Here, TIZA is suing Plaintiff over statements that it perceives to be critical of its functions as a public school. The Court concludes that the body of law establishing that government bodies may not sue for libel applies to TIZA as a public charter school under the MCSL. Accordingly, TIZA's defamation claim fails as a matter of law.

### B.   Merits of the Defamation Claim

Even if TIZA could assert a cause of action for defamation against Plaintiff, its defamation claim would still fail. When a party alleging defamation is a public official and the allegedly defamatory statement relates to the party's official conduct, then that party must not only prove that the statement is false, but also that it was made with actual

malice. *New York Times*, 376 U.S. at 279-80. The parties dispute whether the actual malice standard applies.

TIZA argues that it is a non-public figure because it has not voluntarily thrust itself into the public controversy over its role as a public charter school. The Court disagrees. Here, TIZA is a charter school under the MCSL, which explicitly provides that as a charter school, it is a public school and part of the state's system of public education. The Court concludes that as a public school, TIZA would be subject to the *New York Times* actual malice standard. *See, e.g., Johnson v. Robbinsdale Indep. Sch. Dis. No.* 281, 827 F. Supp. 1439, 1443 & 1444 (D. Minn. 1993) (holding that public school principal criticized for official conduct is a public official for purposes of applying the *New York Times* defamation standard). The statements made by Plaintiff to which TIZA objects all regard TIZA's official operation of a publicly-funded charter school. A contrary ruling would threaten legitimate public debate.

"Actual malice" requires that the statement be made with knowledge that the statement was false or with reckless disregard of whether the statement was true or false. *New York Times*, 376 U.S. at 280. *See also Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991). "Reckless disregard" requires a showing that the speaker "entertained serious doubts as to the truth of the publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Here, TIZA asserts that it has adequately alleged actual malice and that Plaintiff not only entertained serious doubts as to the truth of the statements but knowingly published false statements. In support, TIZA claims that Plaintiff was familiar with TIZA because Plaintiff investigated the school in 2008. In addition, TIZA claims that,

based on Plaintiff's own complaint and in-court statements, it is evident that Plaintiff knows that TIZA is not a "private, Islamic school" or a "mosque."

The Court concludes that TIZA has wholly failed to adequately allege facts that would support a finding of actual malice. It is evident that Plaintiff initiated this lawsuit because it believes that TIZA, while a public charter school by law, is in fact operating like a private, religious school. The allegedly defamatory statements all reflect Plaintiff's belief and TIZA has alleged no facts that would demonstrate that Plaintiff entertains any doubts as to the truth of its statements, which mirror the allegations asserted in this case. Because TIZA has failed to adequately allege actual malice, TIZA's defamation claim fails.[2]

### III.   Tortious Interference Claims

TIZA bases each of its tortious interference claims on the alleged defamation by Plaintiff. In particular, TIZA asserts that Plaintiff interfered with its contractual relationships (both existing and prospective) by making the defamatory statements that also form the basis of its defamation claim. (Counterclaims ¶¶ 12, 18-20, 31-33, 42-44, & 51-55.) Tortious interference claims that are duplicative of a claim for defamation are properly dismissed. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (holding that the statute of limitations applicable to a defamation claim also applied to an interference

---

[2]   Because the Court determines that TIZA has not pled facts to show actual malice, it need not reach the remaining elements of a defamation claim. The Court notes, however, that it is doubtful, based on the record currently before the Court, that TIZA would be able to establish causation, defamation per se, or that the allegedly defamatory statements were anything more than non-actionable rhetorical statements.

claim that was essentially part of the defamation claim); *Pham v. Le*, No. C7-04-9220, 2007 WL 2363853, at *8 (Minn. Ct. App. Aug. 21, 2007) (holding that a tortious interference claim that is duplicative of an unsuccessful defamation claim fails as a matter of law). As the Court explained above, TIZA's defamation claim fails. Accordingly, TIZA's tortious interference claims fail as well.

## CONCLUSION

Consistent with the order above, the Court grants Plaintiff's Motion to Dismiss.[3] Based on the files, records, and proceedings herein, and for the reasons set forth above,

**IT IS ORDERED** that:

1. Plaintiff's Motion to Dismiss Counterclaims (Doc. No. 91) is **GRANTED** consistent with the order above.

2. TIZA's Counterclaims (Doc. No. 76) are **DISMISSED WITH PREJUDICE**.


Dated: December 9, 2009                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge

---

[3] Because TIZA's counterclaims fail under Rule 12(b)(6), the Court declines to reach Plaintiff's alternative argument that the Anti-SLAPP statute also bars TIZA's counterclaims and the parties' related requests for sanctions.