| | |
|---|---|
| American Civil Liberties Union of Minnesota, | Civil No. 09-138 (DWF/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Tarek ibn Ziyad Academy; Islamic Relief USA; Alice Seagren, in her capacity as Minnesota Commissioner of Education; Asad Zaman; Asif Rahman; Mahrous Kandil; Mona Elnahrawy; Moira Fahey; and Mohamed Farid, individually and in their capacities as Directors of Tarek ibn Ziyad Academy, | |
| Defendants. | |

_____

Christopher Amundsen, Esq., Ivan M. Ludmer, Esq., Peter M. Lancaster, Esq., Katie C. Pfeifer, Esq., and Mark D. Wagner, Esq., Dorsey & Whitney LLP; and Teresa J. Nelson, Esq., American Civil Liberties Union of Minnesota, counsel for Plaintiff American Civil Liberties Union of Minnesota.

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Morhman & Kaardal, counsel for Applicants for Intervention.

Shamus P. O'Meara, Esq., Mark R. Azman, Esq., and Margaret Ann Mullin, Esq., Johnson and Condon, PA, counsel for Defendant Tarek ibn Ziyad Academy, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohamed Faird, as to all claims asserted against these Defendants.

Sarah E. Bushnell, Esq., and Max H. Kiely, Esq., Kelly & Berens, PA; and Scott J. Ward, Esq., and Timothy R. Obitts, Esq., Gammon & Grange, PC, counsel for Defendant Islamic Relief USA.

Kathryn M. Woodruff and Tamar N. Gronvall, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Alice Seagren.

_____

## INTRODUCTION

This matter is before the Court on a Motion for an Order for Judgment brought by Defendants Tarek ibn Ziyad Academy ("TiZA") and its directors, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohammed Farid (the "Individual Defendants") (collectively, the "TiZA Defendants") and a Motion to Intervene brought by ten Muslim students who attend TiZA and four of their parents (the "Applicants"). For the reasons set forth below, the Court denies both motions.

## BACKGROUND

The facts of this case are fully set forth in the Court's July 21, 2009 Memorandum Opinion and Order and are summarized briefly here. TiZA is a charter school established in 2003 under the Minnesota Charter School Law ("MCSL"), Minn. Stat. § 124D.10. TiZA is supported by both state and federal tax funds. Defendant Islamic Relief is TiZA's sponsor. In 2003, Islamic Relief and TiZA entered into a Charter School Contract (the "Contract"). (Aff. of Sara E. Bushnell ("Bushnell Aff.") ¶ 3, Ex. B.)[1]

---

[1] "The [sponsor's] authorization for a charter school must be in the form of a written contract signed by the sponsor and the board of directors of the charter school." Minn. Stat. § 124D.10, subd. 6(6). The contract must contain, among other things, agreements by TiZA's board members to comply with the requirement that the charter school be nonsectarian in its operations. *Id*. at § 124D, subd. 6(5) & subd. 8.

The Contract has been renewed twice, first in 2006 and most recently in March 2009. (*Id.* ¶¶ 2, 4, Exs. A & C.) Section 5.4 of the both the 2003 and 2006 version of the Contract reads:

> The CHARTER SCHOOL shall assume full liability for its activities and shall indemnify and hold harmless the Commissioner and the Sponsor, its officers, and their agents and employees from any suits, claims, or liability arising under this Contract. The parties recognize and agree that the Commissioner and the Sponsor are immune from liability under this Contract under Minnesota Statutes section 124D.10, subdivision 25 (1994), as amended, and this paragraph is not intended to modify or otherwise affect that provision or any other law.

(*Id.* ¶¶ 3, 4, Exs. B & C at § 5.4.) Section 5.4 of the 2009 version of the Contract reads:

> The SCHOOL shall assume full liability for its activities and shall indemnify and hold harmless the SPONSOR, its officers, agents and employees from any suits, claims, or liability arising under this Contract or arising from operation of the school. The parties recognize and agree that the SPONSOR is immune from liability under this CONTRACT under the ACT as amended, and this paragraph is not intended to modify or otherwise affect that provision or any other law.

(*Id.* ¶ 2, Ex. A at § 5.4.)

The Minnesota Department of Education ("MDE") is a state agency charged with carrying out the MCSL and dispersing state funds. The MDE was originally named as a defendant, but all claims against the MDE have been dismissed. (Doc. No. 60 at 6 n.2.) Alice Seagren is the Minnesota Commissioner of Education (the "Commissioner"). The Commissioner is charged with approval and oversight of charter schools and with certification of schools' entitlement to state funding. Plaintiff's Establishment Clause claim is asserted against the Commissioner in her official capacity only.

Defendant Asad Zaman is Executive Director, trustee, Board Secretary, and Treasurer of TiZA, as well as the Principal of TiZA's Inver Grove Heights campus. Defendant Asif Rafman is a trustee and the disbursement authorizer for TiZA. Defendant Mahrous Kandil is a trustee and a member of the board of directors of TiZA, as well as the principal of TiZA's Blaine campus. Defendants Mohamed Farid and Moira Fahey are trustees of TiZA and members of TiZA's board of directors. Defendant Mona Elnahrawy is a member of TiZA's board of directors.

Plaintiff American Civil Liberties Union of Minnesota ("Plaintiff") brought this action against Defendants seeking declaratory and injunctive relief based on its allegations that TiZA is a sectarian school that promotes the religion of Islam in violation of the Establishment Clause of the First Amendment to the United States Constitution and the Minnesota Constitution. Plaintiff asserts that Defendants failed to ensure that TiZA operated in a non-sectarian manner. For example, Plaintiff contends that TiZA has permitted, among other things, prayer to be posted prominently in the school's entryway, prayer sessions to be held during school hours, teacher-sanctioned religious material to be posted in classrooms, parent-led or volunteer-led prayer during class-time, and teacher participation in prayer activities. In addition, Plaintiff alleges that TiZA endorses Islamic dress codes and dietary practices and prefers Islamic religious practices through its provision of school transportation only after an Islamic studies program occurs at the end of the day.

In 2009, Defendants moved to dismiss the original complaint. The Court granted in part and denied in part those motions. In August 2009, Plaintiff filed an Amended

Complaint, alleging violations of the state and federal Establishment Clauses. Also in August 2009, Islamic Relief and the Commissioner filed their answers to the Amended Complaint. Both Islamic Relief and the Commissioner brought cross-claims against TiZA for indemnification. Defendants now move to dismiss and for judgment on the pleadings under Federal Rules of Civil Procedure 12(b)(1), 12(c) and 12(h)(3). In addition, Applicants move to intervene under Rule 24.

## DISCUSSION

**I.     TiZA's Motion to Dismiss and for Judgment on the Pleadings**

   **A.     Legal Standard**

A party may move for judgment on the pleadings at any point after the close of pleadings but early enough to avoid a delay of trial. Fed. R. Civ P. 12(c). A court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Rule 12(b)(6). *See Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the

non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott*, 901 F.2d at 1488. A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### B. Section 1983 Claim Against Individual Defendants

In its Amended Complaint, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Establishment Clause of the First Amendment to the U.S. Constitution. (Am. Compl. ¶ 1.) Section 1983 provides a cause of action against "any person who, under the color of any statute, ordinance, regulation, custom or usage" deprives a citizen of Constitutional rights, privileges, or immunities. 42 U.S.C. § 1983. To state a prima facie claim under § 1983, a plaintiff must allege that a defendant acted under the color of state law and that his or her actions deprived a plaintiff of a constitutional or federal statutory right. *See Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).

The Individual Defendants assert that Plaintiff has failed to plead a prima facie case under § 1983 against the Individual Defendants in their individual capacities and, alternatively, that the Individual Defendants are entitled to qualified immunity. Specifically, the Individual Defendants assert that Plaintiff has failed to state claims against them because Plaintiff does not expressly assert any individual conduct by the Individual Defendants or that the Individual Defendants caused a deprivation of a constitutional right.[2]

---

[2] The Individual Defendants also assert that Plaintiff failed to allege facts sufficient to draw an inference that they were acting under the color of law. The Court disagrees. Indeed, in ruling on Islamic Relief's prior motion to dismiss, the Court explained that TiZA is a state actor. (Doc. No. 60 at 20.) The Court also concluded that Plaintiff sufficiently pleaded the elements of "state action" as to Islamic Relief. Here, the Court concludes that Plaintiff's allegations also sufficiently plead "state action" as to the

(Footnote Continued on Next Page)

To sue an official in his or her individual capacity, "a plaintiff must expressly and unambiguously state so in the pleadings." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In the caption of the Amended Complaint, Plaintiff explicitly states that it is suing the Individual Defendants "individually and in their capacities as Directors of [TiZA]." (Am. Compl. Caption.) This alone constitutes a sufficiently clear statement that the Individual Defendants are being sued in their individual capacity. In addition, Plaintiff alleges in the substantive portion of its Amended Complaint that TiZA, its Board of Directors, and Islamic Relief have established certain school policies that endorse and promote Islam and have used tax funds to establish a pervasively religious school. (Am. Compl. ¶ 67.) Plaintiff further alleges that TiZA has close ties with the Muslim American Society of Minnesota ("MAS-MN") and that TiZA is linked by a complex set of personal, corporate, and operational relationships with MAS-MN and other religious organizations. Moreover, Plaintiff alleges that TiZA and its directors permitted entanglement of religion with government by disregarding requirements of Minnesota law. The Amended Complaint specifies policies, practices, and relationships that allegedly violate the Establishment Clause. These allegations are lodged against both TiZA and the Individual Defendants, as the Individual Defendants' actions informed and directed the policies and direction of the school. The Court holds that the Amended

---

(Footnote Continued From Previous Page)

Individual Defendants because they were acting as the employees, administrators, and directors of TiZA.

Complaint contains sufficient facts to state a claim for relief against the Individual Defendants in their individual capacities.

In the alternative, the Individual Defendants assert that they are entitled to qualified immunity as to retrospective monetary relief and dismissal as to injunctive relief. Qualified immunity shields government officials as well as private individuals from claims for legal damages under 42 U.S.C. § 1983. *Wilson v. Layne*, 526 U.S. 603, 614 (1999); *Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999); *Pace v. Moriarity*, 83 F.3d 261, 262-63 (8th Cir. 1996). Qualified immunity, however, does not shield officials from equitable claims. *See Pace*, 83 F.3d at 263. Plaintiff's Amended Complaint does not include a claim for damages. (Doc. No. 226.) Instead, Plaintiff seeks equitable relief through restitution of state funds received by TiZA and injunctive relief with respect to the alleged unconstitutional policies at the school. *See, e.g.*, *Hopkins*, 199 F.3d at 977 (explaining that a monetary award may be an equitable remedy if the award is "restitutionary" in nature"). Accordingly, qualified immunity does not apply to the Individual Defendants.

Moreover, qualified immunity applies only if a defendant can show that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, Plaintiff has sufficiently alleged that TiZA and the Individual Defendants violated the Establishment Clause.

### C. Eleventh Amendment Immunity

TiZA argues that it is an instrumentality of the state of Minnesota and that it and the Individual Defendants are entitled to Eleventh Amendment Immunity. The State and arms of the State are not subject to suit under § 1983 in either federal or state court based on Eleventh Amendment immunity. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990). Unlike States, municipalities do not enjoy Eleventh Amendment immunity from suit. *See Jinks v. Richland County*, 538 U.S. 456, 466 (2003); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Therefore, in determining the applicability of the Eleventh Amendment, the Court must determine whether TiZA "is to be treated as an arm of the State partaking of the State's Eleventh amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mt. Healthy*, 429 U.S. at 280. In determining whether an entity is an "arm of the State" the Court must examine the entity's relationship to the State under state law and consider the provisions of state law that define the entity's character. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430-31 & n.5 (1997); *Mt. Healthy*, 429 U.S. at 280. Courts generally consider powers and characteristics under state law, its autonomy from the state and degree of control over its own affairs, and whether an award would draw on the public fisc. *Gorman v. Easley*, 257 F.3d 738, 743 (8th Cir. 2001), *rev'd on other grounds sub nom. Barnes v. Gorman*, 536 U.S. 181 (2002)).

Minnesota statutes explicitly define school districts as municipalities for the purposes of tort liability. Minn. Stat. § 466.01, subd. 1 ("For the purposes of [the tort

liability statute], 'municipality' means any . . . school district, however organized."

Moreover, Minnesota statutes also explicitly define charter schools as school districts. Minn. Stat. § 124D.10, subd. 8(k). Thus, it is evident that under Minnesota state law, TiZA is considered a municipality. As a municipality, it is not entitled to Eleventh Amendment immunity.[3]

TiZA argues to the contrary, claiming that it is an arm of the State. In support, TiZA asserts that it would have to use state funds to satisfy a judgment against it in this action and that the State of Minnesota exercises substantial control over TiZA. The Court disagrees. First, in this action, Plaintiff does not seek prospective monetary relief; instead, it seeks equitable reimbursement to the State of funds provided to TiZA. If successful, Plaintiff seeks to have TiZA pay money back to the state treasury.[4] Second, while the MCSL does place certain restrictions on charter schools, these restrictions are not so extensive so as to render TiZA an arm of the State. Indeed, charter schools have more freedom from state control than a typical school district. *See* MCSL §§ 124D.10, subd. 1(a)(3)-(5) and subd. 10. This freedom and increased autonomy undermines TiZA's argument that Eleventh Amendment immunity applies.

---

[3] Because the Court determines that TiZA is not entitled to Eleventh Amendment immunity, it need not address the issue of waiver, which was raised by Plaintiffs.

[4] Plaintiff points out that its claim is restitutionary in nature; therefore, only Defendants who received state funds would be required to return the money.

11

TiZA also argues that Eleventh Amendment immunity extends to and immunizes the Individual Defendants. Because the Court holds that TiZA is not entitled to Eleventh Amendment immunity, there is no immunity to extend to the Individual Defendants.

### D.  Cross-Claims

In this action, both the Commissioner and Islamic Relief filed cross-claims for indemnification. TiZA moves for judgment on the pleadings seeking dismissal of both Islamic Relief's and the Commissioner's cross-claims. TiZA asserts that Islamic Relief and the Commissioner cannot seek indemnification for damages caused by their own conduct and that Islamic Relief and the Commissioner impermissibly seek to absolve themselves of their statutory responsibilities under the MCSL. In support, TiZA asserts that Plaintiff has sued Islamic Relief and the Commissioner for their independent liability stemming from their own statutory obligations. TiZA also asserts that indemnification for liability stemming from Islamic Relief's and the Commissioner's violations of their own statutory obligations would run afoul of public policy.

The Commissioner explains that her cross-claim is not asserted against TiZA for any costs or liability that the Commissioner may face for her own actions; but that she is entitled to indemnification for any costs or liability incurred by the Commissioner for TiZA's actions. In making this argument, the Commissioner asserts that because this action was commenced in January 2009, either the 2003 or 2006 contracts apply, both of which provide:

> The CHARTER SCHOOL shall assume full liability for its activities and shall indemnify and hold harmless the Commissioner and the Sponsor, its officers, and their agents and employees from any suits, claims, or

> liabilityarising under this Contract. The parties recognize and agree that the Commissioner and the Sponsor are immune from liability under this Contract under Minnesota Statutes section 124D.10, subdivision 25(1994), as amended, and this paragraph I is not intended to modify or otherwise affect that provision or any other law.

(Bushnell Aff. ¶¶ 2, 3, Exs. B & C at § 5.4.) Based on the plain language above, the Court concludes that the Commissioner is entitled to pursue her indemnification claim. The Contract explicitly provides for indemnification for "any suits, claims, or liability arising under this Contract." The Contract also requires that TiZA comply with applicable state and federal laws, including that the school be "nonsectarian in its programs." (Bushnell Aff. ¶ 2, Ex. B at ¶ 1.2.) Plaintiff's suit alleges that Defendants, including TiZA, violated state and federal law by failing to ensure that TiZA operated in a nonsectarian manner. Thus, the Commissioner has sufficiently alleged that Plaintiff's allegations are covered under the indemnification clause. More factual and legal development of the case is necessary to flesh out the Commissioner's indemnification claim. Thus, it would be premature to dismiss the indemnification claim at this stage of the litigation.

Islamic Relief asserts that the Contract unambiguously requires TiZA to indemnify Islamic Relief for all harm of any kind that Islamic Relief incurs as a result of this litigation. Islamic Relief points to the language in the Contract that provides for indemnification "from any suits, claims, or liability arising under this Contract or arising from operation of the school." Islamic Relief is TiZA's sponsor and entered into the Contract with TiZA. All versions of the contract provide that TiZA will assume full responsibility for its activities and shall indemnify Islamic Relief from any suit, claim, or

liability "arising under this Contract."[5] Islamic Relief also denies any individual liability in this action. Similar to the Commissioner, the Court concludes that Islamic Relief is, at a minimum, entitled to pursue its indemnification claim for expenses incurred as a result of TiZA's actions. Moreover, the Court concludes that it is premature to reach the issue of whether the indemnification clause applies more broadly because it is unclear whether Plaintiff will pursue a broader theory of liability after conducting discovery. Nonetheless, the Court notes the broad language of Section 5.4, which states in the conjunctive that TiZA "shall assume full liability for its activities" *and* "shall indemnify and hold harmless" Islamic Relief "from any suits, claims, or liability arising under this Contract." TiZA has failed to demonstrate that the broad language of Section 5.4 does not, as a matter of law, cover Plaintiff's allegations against Islamic Relief. Accordingly, the Court denies TiZA's motion to dismiss Islamic Relief's cross-claim.[6]

## II. Motion to Intervene

Applicants move the Court for an order allowing them to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. In the Eighth Circuit, a

---

[5] The 2009 version of the Contract adds "or arising from operation of the school." TiZA asserts that the 2009 version of the Contract does not apply. The Court need not decide which Contract applies at this time because the Court concludes that even under the 2003 and 2006 versions, it would be premature to dismiss Islamic Relief's indemnification claim.

[6] The Court also notes that TiZA has failed to demonstrate that the indemnification clauses in the Contract are contrary to public policy and are unenforceable under Minnesota law.

party seeking to intervene in an action must establish Article III standing. *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999). To establish standing, Applicants must demonstrate an injury-in-fact, causation, and redressability. *Id*. Applicants allege that they have the requisite standing because Plaintiff's claims cannot be properly adjudicated without Applicant's participation. In particular, Applicants assert that Plaintiff's Establishment Clause claim is aimed at impairing Applicants' ability to participate in constitutionally-required religious accommodations and that Applicants' rights to free exercise of religion are at risk of being impaired.

To have standing, Applicants must allege an injury that is "concrete, particularized, and either actual or imminent." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833-34 (8th Cir. 2009) (citing *Curry*, 167 F.3d at 422). Here, Applicants are ten Muslim students who attend TiZA and four of their parents. Applicants assert that intervention is warranted because Plaintiff's Establishment Clause claim aims to eliminate religious accommodations that are constitutionally required. In order for Applicants to suffer an injury, however, the Court would have to conclude that TiZA violated the Establishment Clause *and* the remedy would have to impede Applicant's constitutional rights. This alleged injury is too remote and speculative. Moreover, Applicants have failed to demonstrate that any future injury caused by TiZA—such as altering its operation so as to impair Applicants' rights to the free exercise of religion—would be traceable to Plaintiffs rather than to TiZA. For these reasons, the Court concludes that Applicants lack standing to bring this motion.

Even if standing were found, Applicants have not shown that intervention is warranted. Upon timely application, a party shall be permitted to intervene as a matter of right in an action if it establishes that it has a recognized interest in the subject matter of the litigation that might be impaired by the disposition of the case and that will not be adequately protected by the existing parties. Fed. R. Civ. P. 24(a); *see Standard Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 571 (8th Cir. 1998). A party unable to meet these requirements may still be permitted to intervene upon timely application when an applicant's claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b). In such a case, the court considers whether permissive intervention will "unduly delay or prejudice the adjudication of the original parties' rights." *Id.; see Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC,* 485 F.3d 1006, 1009 (8th Cir. 2007). Applicants assert that they meet the requirements for intervention as of right under Rule 24(a) because the disposition of this action will impede Applicants' ability to protect their constitutional interests under the free exercise clause.

Both intervention as of right and permissive intervention require that a motion to intervene be "timely." When determining whether a motion to intervene is timely, the Court considers all of the surrounding circumstances, including the reason for any delay, the prospective intervenor's prior knowledge of the pending action, the progression of the litigation, and the likelihood of prejudice to the parties. *See, e.g.*, *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995).

Applicants filed the present motion to intervene one year and nearly fifty days after Plaintiff commenced this action and more than a month after the deadline to add

16

parties. Applicants acknowledge that the delay appears excessive on its face, but claim that the totality of the circumstances demonstrate otherwise. Specifically, Applicants assert that the delay is justified because there has been intense motion practice and little discovery conducted. Further, Applicants claim that they are now moving to intervene because TiZA parents recently acquired greater participatory opportunities in TiZA policy decisions and because the interests of the students would not necessarily coincide with those of the administrative leaders. These explanations are unpersuasive. While it is certainly true that there has been significant motion practice, Applicants do not explain why or how that practice caused the delay. Moreover, Applicants do not explain how the level of TiZA parents' participation in policy decisions justifies the delay, particularly in light of the fact that Applicants cannot claim that they lacked knowledge of the lawsuit.

Indeed, Applicant's current counsel served as lead counsel for TiZA until November 2009. Therefore, Applicant's current counsel was involved in the motion practice early on in this case. There has been no showing that the parents of students at TiZA were not informed about the lawsuit. To the contrary, the record suggests otherwise. (Decl. of Mark D. Wagner ("Wagner Decl"), ¶ 2, Ex. A.) Applicants' undisputed prior knowledge and long delay in filing this motion to intervene weighs heavily against intervention. *See, e.g., Arrow*, 55 F.3d at 409.

Applicants assert that this action is still in its preliminary stage and that the existing parties would not be prejudiced by their intervention. The parties have already engaged in extensive motion practice and commenced written discovery. In addition, as of mid-March, the parties had begun taking depositions, with eleven scheduled to occur

17

in April. This action has progressed beyond its "preliminary stage." Further, Applicants' delay would prejudice Plaintiff. Discovery began months ago, and Applicants have not participated in any discovery planning or discovery motion practice. While Applicants contend that they have no intention of requesting an extension of the current discovery schedule, that intention alone does little to assure that this case will not be delayed.

Considering all of the circumstances, the Court concludes that Applicants' motion to intervene is untimely and therefore denied. However, even if Applicants' motion to intervene was timely, it would fail on its merits. First, Applicants' cannot establish that they are entitled to intervention as of right because Applicants' interests are adequately represented by both TiZA and the Commissioner. TiZA is a school district under the MCSL. *See* Minn. Stat. § 124D.10, subd. 8(k). Moreover, the Commissioner acting in her official capacity is properly considered a governmental entity. Under the doctrine of *parens patriae*, the Commissioner and TiZA are presumed to adequately represent the interests of students and parents in the district. *See Curry*, 167 F.3d at 423. To rebut that presumption, Applicants must make a "strong showing" of inadequate representation. *Id*. Applicants assert that TiZA and the Individual Defendants do not represent their interests because they have no standing and no obligation to assert the constitutional interests of TiZA's students and that in order to "survive" as a public school, TiZA may capitulate to Plaintiff's demands. The concern that TiZA may enter into a compromise in this lawsuit and that such a compromise may implicate Applicants' free exercise rights is too remote and speculative. In addition, TiZA has vigorously defended itself and its operational practices in this lawsuit and has even asserted the Free Exercise Clause in its Amended

Answer. (Doc. No. 163 ¶ 57.)[7] Based on the above, the Court concludes that Applicants' interests are adequately represented by TiZA and the Commissioner and intervention as of right is not warranted. The Court also concludes that allowing permissive intervention would delay this litigation and that such a delay would not serve the interests of justice.

Even though Applicants' motion to intervene is denied, the Court will allow Applicants to file an amicus brief in this action. Applicants contend that amicus status is insufficient and will not protect their interests. The Court disagrees. The decision to allow the filing of an amicus brief is based on whether the brief will assist the Court by presenting arguments, theories, or facts that are not contained in the parties' briefs. While an amicus brief is more likely to bring new and helpful information to the Court in a case in which a party is inadequately represented, that is not the case here. Instead, the Court will allow Applicants to file an amicus brief because the Applicants will likely have a unique perspective on this case or perhaps helpful information that the parties may not provide.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. TiZA Defendants' Motion for an Order for Judgment (Doc. No. [209]) is **DENIED** in its entirety as follows:

---

[7] Applicants also argue that the Commissioner does not represent their interests, but in support of this argument, Applicants only offer examples of how they disagree with certain litigation strategies. This is not sufficient to show inadequate representation.

  a. TiZA Defendants' request for an order dismissing the Individual Defendants in their individual capacities for Plaintiff's failure to plead prima facie claims under 42 U.S.C. § 1983 and the Minnesota Constitution is **DENIED**;

  b. TiZA Defendants' request for an order allowing the Individual Defendants to invoke qualified immunity as to retrospective monetary relief and dismissing claims as to prospective injunctive relief is **DENIED**;

  c. TiZA Defendants' request for an order dismissing TiZA and the Individual Defendants in their official capacities for lack of subject matter jurisdiction based upon Eleventh Amendment immunity is **DENIED**; and

  d. TiZA Defendants' request for an order dismissing Islamic Relief's and the Commissioner's cross-claims against TiZA is **DENIED**.

2. Applicant's Motion to Intervene (Doc. No. [233]) is **DENIED**.


Dated: May 7, 2010        s/Donovan W. Frank
                DONOVAN W. FRANK
                United States District Judge