UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA,<br><br>Plaintiff,<br><br>vs.<br><br>TAREK IBN ZIYAD ACADEMY, et al.<br><br>Defendants. | Court File No.: 09-cv-00138 (DWF/JJG)<br><br>**TAREK IBN ZIYAD ACADEMY, ASAD ZAMAN, MAHROUS KANDIL, ASIF RAHMAN, MONA ELNAHRAWY, MOIRA FAHEY AND MOHAMMED FARID'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Tarek ibn Ziyad Academy (TiZA), and Asad Zaman, Mahrous Kandil, Asif Rahman, Mona Elnahrawy, Moira Fahey and Mohammed Farid (collectively "Individual TiZA Defendants"), move for summary judgment on the following issues.

## ISSUES

I.   **ON PLAINTIFF'S UNDISPUTED PUBLIC RECORD, PLAINTIFF, THE ASSUMED NAME OF A NON-EXISTENT ENTITY, LACKS THE AUTHORITY TO MAINTAIN THIS ACTION.**

II.  **COUNT I MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT MAINTAIN A SECTION 1983 CLAIM ON BEHALF OF ITS PURPORTED MEMBERS.**

III. **COUNT II MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER THE MINNESOTA CONSTITUTION.**

IV.  **PLAINTIFF'S DEMAND FOR A REFUND OF STUDENT AID IS NOT PERMISSIBLE WITHIN THE NARROW *FLAST* EXCEPTION TO THE PROHIBITION AGAINST TAXPAYER STANDING AND MUST BE DISMISSED.**

V.   **PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUPLICATIVE OF THE CLAIMS AGAINST TIZA AND MUST BE DISMISSED.**

VI.     **PLAINTIFF'S DEMAND FOR PROSPECTIVE INJUNCTIVE RELIEF AGAINST THE INDIVIDUAL TIZA DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES IS IMPERMISSIBLE AND MUST BE DISMISSED.**

VII.    **PLAINTIFF IS NOT CLAIMING A REFUND OF STUDENT AID FROM THE INDIVIDUAL TIZA DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.**

VIII.   **PLAINTIFF IS NOT SEEKING ATTORNEY'S FEES FROM THE INDIVIDUAL TIZA DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.**

IX.     **PLAINTIFF HAS FAILED TO ESTABLISH ANY OF THE INDIVIDUAL TIZA DEFENDANTS CAUSED AN ALLEGED DEPRIVATION OF A CONSTITUTIONAL RIGHT.**

X.      **PLAINTIFF HAS FAILED TO ESTABLISH THAT CERTAIN ALLEGED TIZA POLICIES VIOLATE THE ESTABLISHMENT CLAUSE.**

XI.     **IRUSA AND SEAGREN'S CROSSCLAIMS MUST DISMISSED BECAUSE CROSSCLAIMANTS FAILED TO TENDER, AND BECAUSE THE INDEMINITY CLAUSES AT ISSUE DO NOT COVER CROSSCLAIMANTS' OWN CONDUCT AND ARE AGAINST PUBLIC POLICY.**

## FACTS AND ARGUMENT

"Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *Doyle-Oswald v. Mack Trucks*, 169 F. Supp. 2d 1100, 1102 (D. Minn. 2001) (J. Frank) (citing Fed. R. Civ. P. 56(c)).   With discovery closed as of October 1, 2010, TiZA moves for summary judgment on the following issues.[1]

---

[1] All exhibits herein are attached to the O'Meara Declaration.

## I.   ON PLAINTIFF'S UNDISPUTED PUBLIC RECORD, PLAINTIFF, THE ASSUMED NAME OF A NON-EXISTENT ENTITY, LACKS THE AUTHORITY TO MAINTAIN THIS ACTION.

Discovery has closed, and the time to amend pleadings expired nearly a year ago. [Doc. 155].  On this record (and after one amendment to the Complaint already), Plaintiff American Civil Liberties Union of Minnesota (Plaintiff or ACLU-MN) does not exist. The public record establishes it is the "assumed name" of the Minnesota Civil Liberties Union (MCLU), a non-existent entity dissolved nearly five years ago.   Ex. 1. Specifically, on January 26, 2006, the Minnesota Secretary of State dissolved MCLU, originally incorporated as a Minnesota nonprofit corporation in 1967, by filing a Certificate of Involuntary Dissolution.   Ex. 2.   Pursuant to this certificate, MCLU "ceased to exist" as of January 26, 2006, nearly 5 years ago, and almost 3 years before the commencement of this suit.  Ex. 2.  The Minnesota Secretary of State's office does not contain any filing revising the Certificate of Assumed Name to reflect any new name holder.   Ex. 22; Minn. Stat. § 333.035.[2]   Nor has Plaintiff sought a timely second

---

[2] Minnesota Statutes Section 333.035 provides:

> Within 60 days after the occurrence of any event which makes any statement in the last previous certificate [of assumed name] filed incorrect, an amended certificate shall be filed and the amended certificate shall be published by the person conducting the business in the same manner as provided by section 333.01.

The assumed name record allows the public to ascertain the true owner of a business. Yet there is no record showing that Plaintiff filed any amended certificate changing the name holder from the non-existent dissolved MCLU.  Plaintiff's unamended assumed name record with our State government constitutes Plaintiff's public intent to continue asserting that it is the assumed name of an existing entity, MCLU, when in fact MCLU, and Plaintiff, do not exist.  This has been the unamended public record for several years,

amendment to the First Amended Complaint with any other Plaintiff entity, or sought to avail itself of any authority challenging this clear public record.

On this undisputed public record, Plaintiff has failed to provide any authority allowing Plaintiff, the assumed name of a dissolved non-existent corporation,[3] to maintain a lawsuit on behalf of its former members. *Mattson v. Underwriters at Lloyds*, 385 N.W.2d 854, 857 (Minn. 1987) ("At common law in Minnesota . . . the effect of a dissolution was that the corporation wholly ceased to exist for any purpose."); *Kopio's, Inc. v. Bridgeman Creameries*, 79 N.W.2d 921, 923 (Minn. 1956) ("in the absence of statutory extension, all such powers of a corporation abate at the end of the corporate existence, including the power to sue and be sued."); *cf.* Minn. Stat. § 317A.827(1) (noting administratively dissolved corporation exists for three years after dissolution for the "sole purpose" of certain actions by the attorney general).

---

including the entire duration of Plaintiff's lawsuit against TiZA and the Individual TiZA Defendants. The parties are allowed to rely on this public record, *see Nussbaumer v. Fetrow*, 556 N.W.2d 595, 599 (Minn. App. 1996), *review denied* (Minn. Feb. 26, 1997) (stating policy of allowing, for example, judgment creditors to rely on public record), and by operation of the public record, Plaintiff has waived, and is estopped, from contending otherwise, including asserting any claim that it is actually the assumed name of a different entity, ACLU National, by operation of the non-existent MCLU's articles of incorporation or otherwise. Ex. 2; *see also Stutzka v. McCarville*, 420 F.3d 757, 767 n. 2 (8th Cir. 2005) (court may take judicial notice of public records).

[3] The non-existent MCLU has apparently failed to disclose its dissolution to ACLU-National, as that entity ostensibly continues to believe that MCLU is an existing entity. For example, ACLU-National's 2010 Form 990 (at p. 47) indicates that "Board Members of the Organization's 50 Local Affiliates, the Affiliate Board Members, are Electors, yet as a non-existent entity, MCLU, would have no board. *See* http://www.aclu.org/files/pdfs/about/fy2010_aclu_990.pdf; *see also* http://www.aclu.org/files/pdfs/about/fy2010_aclu_fs.pdf (ACLU's 2010 Audit notes the local affiliates are  "nonprofit, tax exempt organizations").

Under Minnesota Statutes, section 317A.783, former officers or members of dissolved corporation may "assert . . . in the name of the corporation, a claim by or against the corporation," but there is no authority for the non-existent dissolved corporation to sue on behalf of its former members for the claims of former members.[4] The Minnesota appellate courts have not reviewed section 317A.783, but a nearly identical statute exists governing general corporations law,[5] the comments to which state that "[i]t is important to understand that this section in no way continues the corporate existence," and "after dissolution, the corporation does not exist."   Minn. Stat. § 302A.783 and General Comment; *see also Millar v. Unisys Corp*, 1993 WL 276873 (Minn. App. July 27, 1993) (dismissing suit by administratively dissolved corporation for lack of standing per section 302A.783)[6]; *Firstcom, Inc. v. Qwest*, 2004 WL 1402564 (D. Minn. June 21, 2004) (under section 302A.783, dissolved corporation cannot instigate legal action as a corporation, but former officers, directors, or shareholders may file suit

---

[4] In contrast, a shareholder may commence a derivative suit in "which a shareholder of a corporation or a member of an unincorporated association sues *on behalf of the corporation* or association *to assert a right of the corporation* or association which the entity refuses to pursue on its own behalf."   1 Minn. Pract. R. 23.09 § 23:25 (italics added).

[5] The courts have looked to chapter 302A for guidance on 317A.  *See, e.g., Asian Women United of MN v. Leiendecker*, 789 N.W.2d 688, 692 (Minn. App. 2010).

[6] "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S. Ct. 798, 802, 127 L. Ed. 2d 99 (1994); Fed.R.Civ.P 12(h)(3) (court must dismiss action if at any time court determines that it lacks subject matter jurisdiction).

in name of corporation subject to identification in complaint of former officers, directors or shareholders prosecuting suit).

As well, Plaintiff has not sued in its registered corporate name, as required by section 317A.161, subd. 3, but in an assumed name. As of June 1, 2010, however, neither the Minnesota Courts nor the Eighth Circuit have ruled upon whether a corporation, much less a dissolved corporation, may sue under an assumed name. *See, e.g., Metro Bldg Cos. v. Ram Bldgs*, 783 N.W.2d 204 (Minn. App. 2010), *rev. den'd* August 10, 2010 (*existing* corporation permitted to amend to correct misstated registered name under similar for-profit statute (302A.161(3)); "leav[ing] for another day" determination of whether *existing* corporation may sue under assumed name).

Further, in its document entitled *Fiduciary Duties of Directors of Charitable Organizations* the Minnesota Attorney General's Office states:

> **Filing Requirements**. Directors must comply with deadlines for tax and financial reporting, for registering with the Attorney General, for making social security payments, for income tax withholding, and so on. *Additionally, if an organization is incorporated under the Minnesota Nonprofit Corporation Act, its directors have a duty to maintain its corporate status by submitting timely filings to the Secretary of State's Office*. (italics added).

http://www.ag.state.mn.us/charities/fiduciaryduties.asp.

On the undisputed record, Plaintiff, the assumed name of a nonexistent dissolved entity, cannot maintain this suit against the TiZA Defendants on behalf of its former members.

## II.   COUNT I MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT MAINTAIN A SECTION 1983 CLAIM ON BEHALF OF ITS PURPORTED MEMBERS.

Plaintiff, as an organization, purports to maintain this § 1983 lawsuit on behalf of its members.  Doc. 66, at ¶¶ 2, 4-5; Doc. 46 at p. 17 (claiming association standing).  It is a "well-settled principle," however, "that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (minor bystander may not recover damages based upon injuries inflicted upon her father by police officer); *see also Coal. for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395, 399 (8th Cir. 1985) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (holding "only the purported victim . . . may prosecute a section 1983 claim."); *Doharish v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982) (same); *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (stating "one cannot sue for the deprivation of another's civil rights."); *Jenkins v. Carruth*, 583 F.Supp. 613, 616 (E.D. Tenn. 1982), *aff'd*, 734 F.2d 14 (6th Cir. 1984) (in holding husband could not sue for deprivation of civil rights of wife, court stated: "The law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights."); *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir.1986) (same); *Trujillo v. County Commissioners*, 768 F.2d 1186, 1187 (10th Cir.1985) (same).

Because § 1983 rights are personal and § 1983 is a civil rights tort statute, an organization may not bring suit to redress the federally protected rights of its members.[7] *See League of Women Voters v. Bd. of Supervisors*, 737 F.2d 155, 160-61 (2d Cir. 1984) (League as an organization did not have standing under Section 1983 to assert the rights of its members; "[n]either the language nor the history of § 1983 suggests that an organization may sue under the Civil Rights Act for the violations of rights of members."); *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973) (same); *People Organized Welfare & Employment Rights v. Thompson*, 727 F.2d 167, 170 (7th Cir. 1984) ("[a] problem in a case such as this brought under 42 U.S.C. § 1983, a civil rights tort statute, is that section 1983 contains no suggestion that Congress wanted to allow an association to sue to enforce not only its own civil rights but those of its members.").

Because Plaintiff may not maintain a § 1983 action on behalf of its members, Count I of the First Amended Complaint must be dismissed.

---

[7] The Eighth Circuit's decision in *Coalition for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395 (8th Cir. 1985), is distinguishable.  In *Coalition*, the court held that the Coalition had standing to sue on behalf of its members where the Coalition "sought to register new voters itself by having individual Coalition members appointed as deputy registration officials and was prevented from doing so because the [defendant] refused to appoint volunteers as deputy registration officials." *Id.* at 399. Here, the ACLU is claiming injury to its members only and not injury to itself resulting from injury to its members. *See, e.g.,* Doc. 66, ¶ 5; Doc. 60, p. 8.  The Eighth Circuit recognized that absent injury to the organization itself, an organization cannot maintain a claim on behalf of its members. *Coalition*, at 399.

## III.   COUNT II MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER THE MINNESOTA CONSTITUTION.

Plaintiff alleges violations of the Minnesota Constitution.  Doc. 66, ¶¶ 70-74. However, "[u]nlike 42 U.S.C. § 1983, Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota constitution.  Plaintiff[']s] claims under the Minnesota constitution therefore must be dismissed." *Riehm v. Engelking*, 2007 WL 37799 (D. Minn. 2007) *aff'd,* 538 F.3d 952 (8th Cir. 2008); *see also Guite v. Wright,* 976 F.Supp. 866, 871 (D. Minn. 1997) (dismissing Plaintiff's Minnesota Constitution claims as there is no private cause of action for violations of the Minnesota Constitution); *Mlnarik v. Minnetrista*, 2010 WL 346402 (Minn. App. 2010) (same).

## IV.   PLAINTIFF'S CLAIM FOR A REFUND OF STUDENT AID IS NOT WITHIN THE NARROW *FLAST* EXCEPTION TO THE PROHIBITION AGAINST TAXPAYER STANDING AND MUST BE DISMISSED.

Although this Court has determined that Plaintiff's members have taxpayer standing under *Flast v. Cohen*, 392 U.S. 83 (1968) [Doc. 60], the Court did not decide whether the specific relief sought by Plaintiff is within the *Flast* exception, nor has any party addressed the issue.  *See* Docs. 14, 19, 40, 46, 55, 56, 57 & 60.

In its  First Amended Complaint, Plaintiff, on behalf of its taxpayer members, is seeking a refund to the state of Minnesota of the pro rata portion of student aid TIZA received for its students.  Doc. 66, p. 21.  Such relief, however, is not proper under *Flast* and must be dismissed.  *Laskowski v. Spellings*, 546 F.3d 822, 827-28 (7th Cir. 2008) (as circumscribed by *Hein*, the *Flast* exception does not extend to suits for retrospective monetary relief such as the restitutionary remedy envisioned against the defendants).

9

## V.   PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUPLICATIVE OF PLAINTIFF'S CLAIMS AGAINST TIZA AND MUST BE DISMISSED.

Plaintiff's claims against the Individual TiZA Defendants in their official capacities are redundant of its claims against TiZA, and must be dismissed. *Veatch v. Bartels Lutheran Home*, --- F.3d ---, 2010 WL 5293814, *2 (8th Cir. Dec. 28, 2010) (holding "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity. * * * Thus, the court properly dismissed the claim against Leonard [the official] as redundant of the claim against the City."); *see also Jungels v. Pierce*, 825 F.2d 1127 (7th Cir. 1987); *Comer v. Housing Auth.*, 615 F. Supp. 2d 785, 789 (N.D. Ind. 2009); *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 79 (D.D.C. 2009); *Ennis v. Lott*, 589 F.Supp.2d 33 (D.D.C. 2008); *Blunt v. Lower Merion*, 559 F.Supp.2d 548 (E.D. Pa. 2008); *Harrison v. Chalmers*, 551 F.Supp.2d 432, 438 (D.N.C. 2008); *Price v. District of Columbia*, 545 F. Supp. 2d 89 (D.D.C. 2008); *Ennis v. Lott*, 589 F.Supp.2d 33 (D.D.C. 2008); *Cotton v. District of Columbia*, 421 F.Supp.2d 83 (D.D.C. 2006); *Anemone v. Metropolitan Transportation Authority*, 410 F.Supp.2d 255, 264 n.2. (S.D.N.Y. 2006); *Robinson v. District of Columbia*, 403 F.Supp.2d 39 (D.D.C. 2005); *Baines v. Masiello*, 288 F.Supp.2d 376 (W.D.N.Y. 2003); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F.Supp.2d 594 (W.D. Pa. 2002); *Burton v. City of Philadelphia*, 121 F.Supp.2d 810 (E.D. Pa. 2000); *Wallikers v. Harder*, 67 F.Supp.2d 82 (N.D.N.Y. 1999); *Gray v. Eufaula*, 31 F.Supp.2d 957 (M.D. Ala. 1998); *McCaslin v. Wilkins*, 17 F.Supp.2d 840 (W.D.Ark. 1998); *Satterfield v. Schuylkill Haven*, 12 F.Supp.2d 423 (E.D. Pa. 1998); *Union Pac. R.R. v. South*

*Barrington*, 958 F.Supp. 1285 (N.D. Ill. 1997); *Luke v. Abbott*, 954 F.Supp. 202 (C.D.Cal. 1997); *Vance v. Santa Clara*, 928 F.Supp. 993 (N.D.Cal. 1996); *Doe v. Rains County Indep. Sch. Dist.*, 865 F.Supp. 375 (E.D.Tex. 1994); *Amati v. Woodstock*, 829 F. Supp. 998 (N.D.Ill. 1993); *Zervas v. District of Columbia*, 817 F.Supp. 148 (D.D.C. 1993); *Doe v. Douglas County Sch. Dist.*, 775 F.Supp. 1414 (D.Colo. 1991).

## VI.   PLAINTIFF'S REQUEST FOR PROSPECTIVE INJUNCTIVE RELIEF MAY NOT BE GRANTED AGAINST THE INDIVIDUAL TIZA DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES AND MUST BE DISMISSED.

The ACLU seeks prospective injunctive relief by "requiring [all] Defendants to correct and eliminate establishment of religion by TiZA." [Doc. 66 at p. 21].  Prospective injunctive relief, however, may not be granted against an official in her individual capacity.[8]  *Greenwalt v. Indiana Dep't of Corrections*, 397 F.3d 587, 589 (7th Cir. 2005) (holding that "section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Flores v. Von Kleist*, --- F.Supp.2d ---, 2010 WL 3582540, *20 (E.D.Cal. Sept. 10, 2010) (granting defendant's

---

[8] In Rule 12 motion practice, the TiZA Defendants made a similar argument, [Doc. 223 pp. 13-14], but Plaintiff failed to respond to this argument in its opposition brief or at the motion hearing.  Doc. 232, pp. 12-18 (opposition brief); Doc. 259 (hearing transcript). "It is well established that a party concedes an issue by failing to address it in an opposing brief." *Am. Registry of Radiologic Technologists v. Bennett*, 655 F.Supp.2d 944, 948 n.2 (D. Minn. 2009); *Myers v. Morgan*, 224 F.2d 413 (8th Cir. 1915) (a point not argued in the brief of appellant nor discussed is deemed waived); *Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 689 n. 6 (7th Cir.2003) (failure to address argument resulted in waiver). By failing to address this issue, Plaintiff has conceded that its claim for prospective injunctive relief as against the Individual TiZA Defendants, individually, is not proper and must be dismissed.

motion for summary judgment on plaintiff's request for injunctive relief against him in his individual capacity, holding "Section 1983 . . . does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Levin v. Madigan*, 697 F.Supp. 2d 958, 972 (N.D.Ill. 2010) (dismissing plaintiff's claims for injunctive relief against defendants in their individual capacities, as "section 1983 does not permit injunctive relief against state officials in their individual as distinct from their official capacity."); *Farrow v. Wrenn*, 2010 WL 2407136 (D.N.H. 2010) *adopted*, 2010 WL 2793741 (D.N.H. 2010); *Hill v. Washington State Dept. of Corr.*, 628 F.Supp.2d 1250, 1259 (W.D.Wash. 2009); *cf. Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) (recognizing that equitable relief of reinstatement could be obtained against official only in his official, not his individual, capacity).

Accordingly, Plaintiff's claim for prospective injunctive relief against the Individual TiZA Defendants, individually, must be dismissed.

## VII.   PLAINTIFF ADMITTED IT IS NOT SEEKING A REFUND OF STUDENT AID FROM THE INDIVIDUAL TIZA DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES AND SUCH CLAIM MUST BE DISMISSED.

Plaintiff demands that all Defendants "refund to the state of Minnesota the pro rata portion of student aid TIZA has received for its students."  Doc. 66, p. 21, ¶ (b).  During his deposition, however, ACLU Executive Director Charles Samuelson stated that Plaintiff is not seeking any refund of student aid from the TiZA Defendants in their individual capacities:

> Q.    If I look at subparagraph B [of the First Amended Complaint], that allegation seeks a refund to the State of Minnesota for certain student aid received by TiZA, correct?

A.    From the pro rata portion, yes.

Q.    The pro rata portion of student aid TiZA has received for its students?

A.    Correct.

Q.    Do you have any idea how much money that is?

A.    No, we do not at this point.

Q.    Is the ACLU seeking a refund from TiZA Academy, the Academy, itself?

A.    From the school?

Q.    From the school.

A.    Yes.  That's who should pay the refund if the Court determines there is one. And the Court will determine what the pro rata share of it would be.

Q.    Is the ACLU seeking that refund – strike that.  By using the language "refund," is it the ACLU's position that it's seeking money only from the entity that received student aid?

A.    From the school.

Q.    Is it the ACLU's that only TiZA received the student aid?

A.    TiZA received the student aid.

Q.    The school?

A.    The school itself received the student aid.

Q.    Is it the ACLU's position that Asad Zaman received any student aid?

A.    Not directly, no.

Q.    Is the ACLU seeking a refund from Mr. Zaman individually?

A.      We are seeking it from the school.

Q.      Would that be the same as to all the individual defendants?

A.      Yes.

Q.      So you are not seeking a refund from Asad Zaman, correct?

A.      Correct.

Q.      Or Asif Rahman?

A.      Correct.

Q.      Or Mahrous Kandil?

A.      Correct.

Q.      Or Mona Elnahrawy?

A.      Correct.

Q.      Or Moira Fahey?

A.      Correct.

Q.      Or Mohamed Farid?

A.      Correct.

Q.      You're only seeking a refund from TiZA the school?

A.      Correct.

Q.      And is that because only TiZA the school received the student aid?

A.      Correct.

Ex. 3 (Samuelson 412:1-414:9).

Additionally, during oral argument on The TiZA Defendants' Rule 12(c) and (h)(3) Motions to Dismiss (March 26, 2010), counsel for the ACLU informed the Court

that ACLU was only seeking such refund from the defendants that actually received the student aid.

> ACLU Counsel:   I can provide some comfort, I think, perhaps to the individual Defendants. We are asking for a refund of monies from the Defendants without differentiation amongst the Defendants. But, to us implicit in that word, refund, is that you had to have received something in order to get it back. And so if, for instance, an individual Defendant did not receive any money, they don't have any money to refund. If the Commissioner didn't receive any money, they don't have any money to give back. TiZA, obviously, did receive money.

Doc. 259, p. 60:12-22.

In its Order on the Motion, the Court stated: "Plaintiff points out that its claim is restitutionary in nature; therefore, only Defendants who received state funds would be required to return the money."  Doc. 260, p. 11.  The Court further provided

> First, in this action, Plaintiff does not seek prospective monetary relief; instead, it seeks equitable reimbursement to the State of funds *provided to TiZA*. If successful, *Plaintiff seeks to have TiZA pay money back to the state treasury*.

*Id.* (*emphases added*).

Because the ACLU is not seeking a refund of student aid from the Individual TiZA Defendants, individually, such claim against them must be dismissed.

## VIII. PLAINTIFF IS NOT SEEKING ATTORNEY'S FEES FROM THE INDIVIDUAL TIZA DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

Plaintiff's demands include attorney's fees, but not as against the Individual TiZA Defendants:

WHEREFORE, Plaintiff requests the following relief . . .

       *       *       *       *

(c)    Plaintiff's attorneys' fees and costs of suit pursuant to 42 U.S.C. §1988, against the Commissioner, TIZA, and Islamic Relief.

Doc. 66 ¶ 1 (defining "TiZA" as Tarek ibn Ziyad Academy only) and p. 21, ¶ (c) (Prayer for Relief). [9]

Accordingly, any purported claim against the Individual TiZA Defendants in their individual capacities for attorney's fees must be dismissed.

## IX. PLAINTIFF FAILED TO ESTABLISH THE TIZA DEFENDANTS, INDIVIDUALLY, CAUSED A DEPRIVATION OF CONSTITUTIONAL RIGHTS.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the

---

[9] If Plaintiff was seeking attorney's fees from the Individual TiZA Defendants in their individual capacities, the Eighth Circuit has held that absent bad faith, the individual defendants cannot be liable for attorney's fees under Section 1988 in their individual capacity. *Pickett v. Milam*, 579 F.2d 1118, 1120 (8th Cir. 1978) (holding that because there is no indication that the defendants acted in bath faith, no award of attorney's fees against the defendants in their individual capacities is justified under Section 1988). *See also D'Aguanno v. Gallagher*, 50 F.3d 877, 881 (11th Cir. 1995) (holding "for qualified immunity purposes, the term 'damages' includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity."); *Familias Unidas v. Briscoe*, 619 F.2d 391, 406 (5th Cir. 1980) ("[t]hough all the defendants were sued in their individual capacities, as well, the same qualified "good faith" immunity that insulated them from personal liability for damages also forecloses their personal liability for plaintiffs' attorney's fees."); *Visser v. Magnarelli*, 542 F.Supp. 1331 (N.D.N.Y. 1982) (proof of bad faith is necessary to render a defendant liable for fees in his individual capacity under section 1988 and a failure to meet the requirements of the good-faith qualified immunity test generally available to government officials satisfies bad-faith standard); *United Mine Workers v. Faerber*, 365 S.E.2d 357, 359 (1987) (under "bad faith" exception, attorney's fees and costs may be awarded to the prevailing party, however, when such an award is made against a public official, he ordinarily is not liable personally to pay the award).

alleged deprivation was committed by a person acting under color of state law." *Cook v. City of Bella Villa,* 582 F.3d 840, 848-49 (8th Cir. 2009).

To demonstrate each individual TiZA Defendant personally caused a deprivation of a constitutional right, Plaintiff must establish:

> the defendant's unconstitutional or unlawful action was the <u>cause in fact</u> of the plaintiff's injury. * * * Conduct is the cause in fact of a particular result if the result would not have occurred but for the conduct. Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result.

*Forest Park II v. Hadley*, 408 F.3d 1052, 1059 (8th Cir. 2005) (quotations and brackets omitted) (emphasis added); *see also Martinez v. California*, 444 U.S. 277 (1980) (conduct must have sufficiently close relationship to the claimed violation to conclude defendant "subjected" plaintiff "to deprivation" of federally protected right).

Here, Plaintiff failed as a matter of law to establish the TiZA Defendants, individually, "caused" any alleged deprivation of the taxpayers' constitutional rights.

For example, Mona Elnahrawy has never taught Arabic Language and is unaware of how the dress code was adopted. Ex. 4 (Elnahrawy 96:2-7, 225:9-20). She has never disciplined any child for a dress code violation other than for an improper color. Ex. 4 (Elnahrawy 226-28). She had no role in deciding any after school programs. Ex. 4 (186:14-18). She was on the Student Committee, which coordinated a number of events, including fire drills, tornado drills, fun night, movie night, and reading contests. Ex. 4 (Elnahrawy 52-71). She had no involvement in selecting the bus schedule or reviewing transportation costs. Ex. 4 (Elnahrawy 180). Further, Ms. Elnahrawy has never been to the Blaine campus. Ex. 4 (Elnahrawy 67); *see also* Ex. 3 (Samuelson 285-86) (noting

Plaintiff has no individual instances of conduct by Ms. Elnahrawy supporting any individual claims).

Similarly, Moira Fahey may have instructed people to remove their shoes when on the "carpeted area" at the Inver Grove Heights campus, but that was for sanitary reasons. Ex. 5 (Fahey 143:23-144:5).  She also assisted in the supervision of students during religious accommodation activities, which is not a deprivation of any constitutional right, but a constitutional obligation of TiZA.  Ex. 5 (Fahey 149-50).  Plaintiff further alleges Moira refused to provide former TiZA employee Janeha Edwards with information about TiZA Board meetings [Doc. 176, ¶ 5], yet even if true,[10] such an allegation is unrelated to the Constitution, or any deprivation of a Constitutional right. *See also* Ex. 3 (Samuelson 285-86) (noting Plaintiff has no individual instances of conduct by Ms. Fahey supporting any individual claims).

Similarly, the record fails to support a personal capacity claim against Asif Rahman.  He was a TiZA disbursement authorizer for about a year (2008/2009), in which he acted as a neutral third party to review Mr. Zaman's expenses / reimbursements.  Ex. 6 (Rahman 18-19).  He has been a Member/Trustee of TiZA since about 2008.  Ex. 6 (Rahman 147).  Lastly, he served as an evaluator of Mr. Zaman's employment performance.  Ex. 6 (Rahman 147).  These facts, however, fail to substantiate any allegation that his TiZA activities were the cause in fact of any constitutional deprivation.

Mohamed Farid is a founder and current Board member of TiZA, but these facts are not supportive of any personal capacity claims.  Ex. 7 (Farid 48, 57).  For example,

---

[10] Ms. Fahey disputes this allegation.  Doc. 196, ¶¶ 3, 5.

the Board selected TiZA's name, but it was not Farid's idea, and the Board never discussed how TiZA should provide a prayer accommodation. Ex. 7 (Farid 121-23, 206). Nor did Farid personally implement a dress code. Ex. 7 (Farid 180-82). Farid worked part-time for TiZA as an English as Second Language instructor and volunteered as a Community Liaison. Ex. 7 (Farid 109, 119-21 (liaison role included assistance with student discipline issues, language barriers, disputes with administration, and admission issues)). These facts, however, are unrelated to any personal conduct causing a deprivation of constitutional rights. *See* Ex. 3 (Samuelson 285-86) (noting Plaintiff has no individual instances of conduct by Mr. Farid supporting any individual claims).

Dr. Mahrous Kandil is TiZA's Board chair and Blaine Campus Director. Ex. 8 (Kandil 141, 143). Dr. Kandil directed teachers to redact religious material from Arabic Language instructional books, but that was the implementation of TiZA's policy to extract religion from its curriculum, as opposed to any individual conduct advancing religion. Ex. 8 (Kandil 417 (Dr. Kandil's directions as to redactions), 422-24 (TiZA's policy to exclude religion from curriculum)). Dr. Kandil was involved in the construction projects at Blaine and Inver Grove Heights, but his individual conduct fails to support any constitutional violations. Ex. 8 (Kandil 408-13). Dr. Kandil was also a MAS-MN Board member in the 2006-2008 time frame and its President in 2008 (ex. 8 (Kandil 41)), but he did not draft TiZA's statement of values (ex. 8 (Kandil 48-49)) nor did he draft MAS-MN convention brochures, which allegedly contain references to TiZA. Ex. 8 (Kandil 74). Dr. Kandil further had no involvement with parental participation in religious accommodation activity. Ex. 8 (Kandil 282).

As Executive Director and former Board member, Mr. Zaman was involved in policy level decisions at TiZA, but individual "cause-in-fact" conduct is lacking. For example, Mr. Zaman was never present for any Friday religious accommodation activity. Ex. 8 (Zaman 884:14-23). [11] A staff committee, not Mr. Zaman, prepared the school calendar. Ex. 8 (Zaman 781:7-14). And TiZA and its food consultant, not Mr. Zaman personally, managed TiZA's food purchases and policies. Ex. 8 (Zaman 784-86). Nor does Mr. Zaman have personal involvement in the administration of standardized testing. Ex. 8 (Zaman 856-57).

Plaintiff has failed to establish that any of the TiZA Defendants personally caused a deprivation of its taxpayer members' constitutional rights. Plaintiff's personal capacity claims must be dismissed.

## X.   PLAINTIFF FAILED TO ESTABLISH CERTAIN TiZA POLICIES VIOLATE THE ESTABLISHMENT CLAUSE.

Plaintiff asserts certain TiZA policies promote religion in violation of the Establishment Clause. In early Rule 12 motion practice, the Court denied dismissal of these claims, reasoning that factual inquiry was needed to analyze the issues. Doc. 60, pp. 22-24. After extensive discovery, the record fails to support such claims.

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." "This apparently straightforward prohibition can rarely be applied to a given situation with ease, however. *Florey v. Sioux Falls Sch. Dist.*, 619 F.2d 1311, 1313-14 (8th Cir. 1980). "The applicable

---

[11] Except during Plaintiff' campus inspections.

test for evaluating whether state action has violated the Establishment Clause is that established by *Lemon v. Kurtzman*." *Stark v. ISD 640*, 123 F.3d 1068, 1073 (8th Cir. 1997) (citation omitted).  It was developed to "draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: sponsorship, financial support, and active involvement of the sovereign in religious activity." *Lemon*, at 612.  "In order to satisfy the *Lemon* test, a challenged governmental action must (1) have a secular purpose, (2) not have the primary or principal effect of advancing religion, and (3) not foster an excessive entanglement with religion." *Id.*

In the first prong, the court reviews not only the express language of the policy, but also the motivations behind the policy.  *See Florey v. Sioux Falls Sch. Dist.*, 619 F.2d 1311, 1314-15 (8th Cir. 1980) ("the rules permit the schools to observe holidays that have both a secular and a religious basis . . .").

The second prong requires the court determine whether the primary effect of the policy advances or inhibits religion. *Lemon*, at 612.  However, "when the primary purpose served by a given school activity is secular, that activity is not made unconstitutional by the inclusion of some religious content." *Florey*, 619 F.2d at 1316. Government activity that merely has an "indirect, remote or incidental benefit upon religion," *Lynch v. Donnelly*, 465 U.S. 668, 683 (1984), does not advance religion in violation of the Establishment Clause. *Commack v. Weiss*, 294 F.3d 415, 430 (2d Cir. 2002).

> . . . **Lemon v. Kurtzman** . . . permits a given activity if "its principal or primary effect (is) one that neither advances nor inhibits religion." It would be literally impossible to develop a public school curriculum that did not in

some way affect the religious or nonreligious sensibilities of some of the students or their parents. School administrators should, of course, be sensitive to the religious beliefs or disbeliefs of their constituents and should attempt to avoid conflict, but they need not and should not sacrifice the quality of the students' education. They need only ensure that the primary effect of the school's policy is secular.

Florey, 619 F.2d at 1317 (citations omitted; emphasis in original). "[W]hen courts adjudicate claims that some governmental activity violates the Establishment Clause, they must be careful not to invalidate activity that has a primary secular purpose and effect and only incidental religious significance." *Marchi v. Cooperative Educational Services,* 173 F.3d 469, 476 (2d Cir. 1999). For a law to have forbidden "effects" under *Lemon,* it must be fair to say that the *government itself* has advanced religion through its own activities and influence." *Stark*, 123 F.3d at 1074-75 (district did not advance religion by honoring religious accommodation requests).

The third prong mandates that government policy not "foster an excessive . . . entanglement with religion." *Lemon,* 403 U.S. at 613. "[I]f the state must engage in continuing administrative supervision of nonsecular activity, church and state are excessively intertwined." *Brandon v. Board of Ed.,* 635 F.2d 971, 979 (2d Cir. 1980). "[T]he very restrictions and surveillance necessary to ensure that teachers play a strictly non-ideological role give rise to entanglements between church and state." *Lemon*, 403 U.S. at 620-21. However, teachers altering their teaching methods only as necessary to provide requested accommodations do not create excessive entanglement. *Stark*, 123 F.3d at 1075.

Contrary to Plaintiff's claims, the following issues are consistent with the Establishment Clause.

Transportation.    Plaintiff contends that TiZA's transportation arrangement promotes religion because the afternoon pick-up time is 4:15 instead of directly after school at 3:30 which, Plaintiff contends, permits TiZA to promote Islam by offering Islamic Studies from 3:30-4:15.  Plaintiff is wrong; Islamic Studies is offered by MAS-MN, not TiZA.  See Ex. 10 (Rabeaa p. 129).  TiZA sponsored after school programs include a CARE program, a homework program, reading club, cultural studies, arts and crafts, and a sports fitness program.  See Ex. 10 (Rabeaa p. 133-34, 137-38); Ex. 4 (Elnahrawy 184-85).  Boy and Girl Scout programs are also available.  See Ex. 10 (Rabeaa p. 129).  Mr. Zaman explained the basis for the later pick up time:

> Our legal counsel assures us that none of the statues [sic] referenced in the report mandate a charter school to provide transportation services at the end of the normal school day.  Many charter schools provide transportation only after their "after-school" programs are complete for reasons similar to ours.  Tarek ibn Ziyad Academy realizes significant costs savings by purchasing bus services during off-peak hours.  These savings directly contribute to student academic achievement.  Tarek ibn Ziyad Academy also operates after-school programs, some of them under a grant from the Department of Education which benefit from the current transportation arrangement.  An overwhelming majority of the families have rejected the 3.45 departure option and have requested a 4.30 departure time due to parent work schedule and a desire to participate in various after school activities.

Ex. 11 (depo ex. 59).  The bus pick-up time is secular, and not religious.

School Lunch Program.    Plaintiff argues that TiZA's response to the dietary preferences of its student body to avoid pork promotes Islam.  TiZA's practice does not promote religion, but simply accommodates the nutritional demands of its students and

their parents.  Ex. 10 (Rabeaa p. 208-11).  Based upon student/parental demands, if TiZA purchased pork, no students would consume it and it would needlessly go to waste.  The Federal School Lunch Program mandates that student food preferences be considered in the development of menu offerings.  Ex. 12 (C. Anderson 84-86).  TiZA's nutrition program is secular, and compliant with the Federal School Lunch Program.  *See* 7 C.F.R. § 210.10(g)(3) ("Schools should consider ethnic and religious preferences when planning and preparing meals.").

Calendar.  Plaintiff contends that TiZA promotes Islam by structuring its calendar around Islamic holidays due to the high Muslim student population.  TiZA, however, also accommodates Christian holidays.  Ex. 10 (Rabeaa 222-23); Ex. 13.  If TiZA failed to accommodate Muslim students, excessive absenteeism would result.  Ex. 10 (Rabeaa 222); Ex. 8 (Kandil 166-67).  TiZA's calendar does not favor religion any more than any other public school favors Christianity by scheduling vacations at Christmas and Easter, but is designed to accommodate the preferences of students, teachers and their families to avoid high absenteeism.  *See Koenick v. Felton*, 973 F.Supp. 522 (D. Md 1997) (statutory holiday for Friday and Monday at Easter did not violate Establishment Clause as it served secular purpose of avoiding high teacher/student absenteeism and did not mandate religious participation).

Lease Agreement.  Despite having received express MDE approval for lease aid funding for all years of its operations (*see, e.g.,* Ex. 12 (C. Anderson 286-294), Plaintiff contends TiZA's lease payments are somehow religious.  In fact, all Minnesota public charter schools, including TiZA, must satisfy rigorous criteria before the MDE will

24

approve the issuance of lease aid.  Overall, in its review of lease aid applications, the MDE evaluates the appropriateness of the school building as instructional space and the reasonableness of the cost for the space.  Ex. 12 (C. Anderson 281-82).  As to the reasonableness of the cost, the MDE analyzes, *inter alia*, the "cost or value of the property, location, and lease rates for comparable properties in the same area," and "the extent to which the lease conforms to applicable state laws and rules."  Ex.12 (C. Anderson 282:20-23); Minn. Stat. § 124D.11(4)(2).  TiZA's successful satisfaction of these criteria was confirmed by TiZA expert, and former MDE financial analyst, Charles Speiker and former MDE Deputy Commissioner Chas Anderson.  *See* Doc. 488-1, p. 60; Ex. 12 (C. Anderson 278-94).[12]  TiZA was further awarded a federal grant by the MDE in the amount of $498,000 to improve its facilities to improve the student learning process.  *See* Ex. 12 (C. Anderson 174-76).  The MDE understood the improvements would benefit the landlord, but mandated longer term leases to protect the benefits to the school and integrity of the use of the money.  Ex. 12 (C. Anderson 178-79).  MDE has also awarded TiZA the Minnesota School Finance Award for the last three years.  Doc. 488-1, at p. 66.  TiZA's leases are not religious, but represent prudent secular financial planning which are fully compliant with the law.

     <u>Carpeted Area</u>.  Plaintiff contends that "[a] large space in the school is covered by a prayer rug that, on information and belief, is used primarily for religious purposes." Doc. 66 ¶ 49(i).  TiZA has no "prayer rug."  Rather, such claim refers to a common area

---

[12] Moreover, any claim of an Establishment Clause violation based on TiZA's lease agreement with a sectarian entity fails because Minnesota law expressly permits a public charter school to lease from a sectarian entity.   Minn. Stat. § 124D.10(17).

at TiZA's Inver Grove Heights campus with a permanently affixed carpet installed by the prior owner – the Inver Grove Heights Independent School District, and which pre-dates TiZA's existence or rental of the facility. Ex. 10 (Rabeaa 173:25-174:13); Ex. 9 (Zaman 488:13-16); Doc. 488-1, p. 20 (Moore Report).   This area is a multi-use area, used by teachers and students for activities such as silent reading, small group, games, and accommodations for student requested prayer.   Ex. 10 (Rabeaa 173:25-174:13); Ex. 14 (Islam 53:15-54:14).   Based on good hygiene, shoes are not usually worn on carpeted areas that will be used for sitting and for those reasons some teachers have prompted students to remove shoes while using this carpeted area. Ex. 14 (Islam 54:25-56:21).   It is not a prayer rug.   Ex. 14 (Islam 54:15-23); Ex. 15 (K. Anderson 60:14-61:1).   This carpeted area serves numerous secular purposes.   This claim must be dismissed.

Titles.   Plaintiff contends that "TIZA encourages school personnel and students to refer to teachers and other employees by such religious-based titles as 'Brother' and 'Sister.'" Doc. 66 ¶ 54.   Although such titles are used at TiZA, TiZA does not have a policy or procedure regarding their use nor does TiZA "encourage" students to use such titles; they are used as a sign of respect.   Ex. 10 (Rabeaa 229:22-231:11); Ex. 5 (Fahey 162-63) (indicating teacher – not TiZA - determined how she preferred to be addressed whether by Sister or Ms.); *see also Begay v. U.S.*, 553 U.S. 137, 150  (2008) (J. Scalia concurring) (using "brethren" to refer to judges on district courts and courts of appeal); *State of MN v. Yeazizw*, 2002 WL 31474481 (D. Minn. Nov. 4, 2002) (using "brethren" to refer to judges of the state courts).   These titles are used as a sign of respect, and are no different than Mister, Miss, Your Honor, or Doctor.

School Logo.  Plaintiff's counsel contends TiZA's logo resembles the Dome of the Rock, yet Plaintiff's Executive Director disagrees with his lawyers.  *See* Ex. 3 (Samuelson 424).  This claim must be dismissed.

School name.  Plaintiff contends that utilizing the name of a Muslim leader (Tarek ibn Ziyad) itself promotes religion.  In fact, Ziyad was known to promote the peaceable assimilation and co-existence of different peoples, and excelled in science, math, medicine and philosophy for many years.  *See* Ex. 10 (Rabeaa 46) and Ex. 16 (Menzies 11-12).  TiZA's name does not promote religion.

Excessive MDE Oversight.  Plaintiff contends that TiZA's alleged religious activities has caused the MDE to bear excessive oversight burdens with respect to TiZA. Doc. 66, ¶ 55.  This claim has been wholly refuted by the testimony of the former MDE Deputy Commissioner Chas Anderson.  Ex. 12 (C. Anderson 332:1-10).  This claim must be dismissed.

## XI.   IRUSA AND SEAGREN'S CROSSCLAIMS ON THE INDEMINIFICATION CLAUSE IN THE CHARTER SCHOOL CONTRACT MUST BE DISMISSED.

IRUSA and Seagren have crossclaimed against TiZA on identical indemnification provisions of the 2003 and 2006 Charter School Contracts.[13]  Doc. 74 (pp. 11-13); Doc 96 (pp. 20-21).  At TiZA's Rule 12(c) Motion hearing, the Court agreed Plaintiff seeks recovery against IRUSA and Seagren for their independent actions, not derivative actions

---

[13]A 2009 Charter School Contract also exists [Doc. 230-1], but IRUSA and Seagren have not asserted crossclaims under it, despite the crossclaims being filed after its July 1, 2009 effective date [Docs. 74 (08-17-09) and 96 (09-04-09)], nor have either sought to amend their pleadings.

of TiZA.  Doc. 259, p. 47:14-18.  With discovery now complete[14], there is no change in the nature of the independent (as opposed to derivative) claims asserted against IRUSA and Seagren.  *See, e.g.*, Ex. 12 (C. Anderson 368:9-23).[15]  IRUSA and Seagren's indemnity claims are thus limited to their own conduct as proven by Plaintiff.

As a threshold matter, Seagren conceded her crossclaim must be dismissed, as Seagren "does not read the indemnification provision to cover liability for her own actions and nothing in the Commissioner's cross-claim suggests as much . . .."  Doc. 231, p. 5.  Additional independent reasons, discussed *infra*, further support dismissal of both Seagren and IRUSA's crossclaims.

### 1.      Crossclaimants' Failure to Tender Mandates Dismissal.

Crossclaimants' failure to request a defense (tender) mandates dismissal of the crossclaims:

> If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of damages recovered, but for all reasonable and necessary expenses incurred

---

[14] Unlike the restrictions of past Rule 12 motions, the submission of evidence outside the pleadings is permissible in a Rule 56 motion.

[15] TiZA Expert Robert Wedl also provided a detailed discussion of the responsibilities of IRUSA as a sponsor, stating the "Minnesota Charter School Act requires that a public charter have a sponsor that provides oversight and assurance of compliance with state and federal law as well as with the contract between the charter school and sponsor.  The sponsor is the entity with the knowledge and experience to facilitate compliance of the school with regard to state and federal law and regulations impacting public educational entities."  *See* Doc. 488-2, at p. 15.

in such defense.   Only in such case is there a right to recover such expenses.

*Jack Frost v. Engineered Bldg Comp.*, 304 N.W.2d 346, 352-53 (Minn. 1981) (underscoring added); *Seifert v. Regents*, 505 N.W.2d 83, 87 (Minn. App. 1993) ("A tender of defense is a condition precedent to the creation of an obligation to indemnify."). Service of a crossclaim for indemnification "does not constitute tender of the defense, a condition precedent for recovering attorney's fees from an indemnitor." *Logefeil v. Logefeil*, 367 N.W.2d 114, 116 n.1 (Minn. App. 1985); *Itzep v. Target*, 2010 WL 2278349 (W.D. Tex June 4, 2010) (same) (applying Minnesota law)).

The obligation to tender was recently confirmed:

[A] tender of defense is a condition precedent to the creation of an obligation to indemnify. *** Swiss Re has not proffered any evidence to establish that it tendered its defense of the claim to SuperValu, and that SuperValu refused to defend. An indemnitee cannot recover attorneys' fees in defense of a claim absent its tendering the defense to the indemnitor and the indemnitor's refusal.   Therefore, Swiss Re cannot now recover attorneys' fees and costs in connection with defending and administering the claim relative to the Bond.

*Swiss Re v. SuperValu*, --- F.Supp. 2d ---, 2010 WL 4065600 (D. Minn. October 14, 2010) (underscoring added; citations omitted).

In *Home v. National Union*, 658 N.W.2d 522 (Minn. 2003), the Court reviewed "tender" in an insurance context, and held providing "the insurer notice of a lawsuit and the opportunity to defend" satisfies the obligation to tender.   *Id*., at 533-34.   But application of *National Union* beyond insurance law cases has been rejected.

In *Risk & Associates v. Larson*, 2008 WL 5396839 (Minn. App. Dec. 30, 2008), the Court reviewed an indemnity provision in a joint venture termination agreement, and

refused to apply *National Union*, reasoning "[t]he unique characteristics of the insurer-insured relationship were clearly key to the Minnesota Supreme Court's opinion in [*National Union*]. . . .   We agree with the appellant that none of these reasons compels the application of the [*National Union*] standard to a non-insurance case like this one." *Larson*, at *5-6.

The issue arose again in *Mahoney & Emerson v. Private Bank*, 2009 WL 1852789 (Minn. App. June 30, 2009).   The trial court held a tender occurred because the indemnitor's "conduct of the litigation and defense of these proceedings is a clear indication that a more specific tender would have been to no avail.   [Indemnitor]'s response to the motion for indemnification was to oppose the motion in all respects.   Thus, [indemnitor]'s contention that [indemnitee] somehow breached a duty to tender the defense appears ill conceived."   *Id.*, at *9.   Without mention of *National Union*, the Court of Appeals reversed:

> But in Minnesota, tender of defense is a condition precedent to the creation of an obligation to indemnify for attorney fees and costs.
>
> Here, there is no indication in the record that Hagberg ever tendered defense of the Private Bank action to Mahoney. The conclusion that "a more specific tender would have been of no avail" did not relieve Hagberg of the legal obligation to tender the defense. Accordingly, the district court erred as a matter of law when it granted Hagberg summary judgment on the indemnification claim under the bylaws because Minnesota law does not allow for recovery of attorney fees in indemnification lawsuits absent a tender of defense.

*Id.*, at * 9-10 (citations omitted).

Here, the events related to tender are as follows:

February 10, 2003   First Charter School Contract.  Doc. 74-1.

| July 1, 2006 | Second Charter School Contract.  Doc. 74-2. |
| January 21, 2009 | ACLU files lawsuit.  Doc. 1. |
| Jan/Feb, 2009 | TiZA offered to provide a defense, but IRUSA declined.  Ex. 9 (Zaman 818:16-819:8). |
| July 29, 2009 | IRUSA sent letter to TiZA but failed to request a defense.  Ex. 18. |
| July 30, 2009 | Seagren sent letter to TiZA but failed to request a defense.  Ex. 19. |
| August 17, 2009 | IRUSA files cross-claim against TiZA.  Doc. 74. |
| September 4, 2009 | Seagren files cross-claim against TiZA.  Doc. 96. |
| October 11, 2010 | Without authority of TiZA, Mr. Zaman states TiZA would provide a defense to IRUSA.  Ex. 9 (Zaman 821:6-12). |
| October 12, 2010 | IRUSA sent letter to TiZA regarding Mr. Zaman's October 11 comment.  Ex. 20. |
| November 24, 2010 | Mr. Zaman clarifies his comment that any offer to defend IRUSA was a personal comment and would require TiZA Board approval.[16]  Ex. 21. |

Both IRUSA and Seagren failed to tender to TiZA, which is fatal to their demand for indemnity, including any purported demand for recovery of any "settlement payment" to Plaintiff or their attorneys fees incurred in this action.[17]

---

[16] Mr. Zaman's gratuitous comment offering a defense to IRUSA was without any authority from TiZA's Board, and ineffective.

[17] Because the indemnity provisions do not include the right to recovery attorneys' fees and costs incurred in prosecuting the right to indemnification, such fees are not recoverable. *Seifert*, 505 N.W.2d at 86-87; *Dochniak v. Dominium Mgmt Serv*., 2008 WL 906798, * 4 (D. Minn. April 1, 2008) (citing *Bagby v. Merrill Lynch*, 491 F.2d 192, 198 n. 9 (8th Cir. 1974) (no recovery of fees incurred in establishing right of indemnity)).

### 2.     Crossclaimants may not be indemnified for their own conduct.

"The general rule is that a person must accept responsibility for damages resulting from their own actions; they are not entitled to indemnity for damages caused by their own conduct." *Fossum v. Kraus-Anderson*, 372 N.W.2d 415, 417 (Minn. App. 1985). Indemnity is available from one joint tortfeasor against another under limited circumstances, including where "an express contract exists between the parties that contains an explicit undertaking to reimburse for liability of the character involved." *In Re 35W Bridge Litigation*, 786 N.W.2d 890, 899 (Minn. App. 2010).

In *Farmington Plumbing v. Fischer Sand*, 280 N.W.2d 838, 842 (Minn. 1979), superseded by statute, *Katzner v. Kelleher*, 545 N.W.2d 378 (Minn. 1996), the Court stated "'[i]ndemnity agreements are to be strictly construed when the indemnitee . . . seeks to be indemnified for its own negligence.  There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication.'" *See also Servais v. TJ Management*, 973 F. Supp. 885 (Dist. Minn. 1997) (rejecting indemnification where clause applied to injuries while utilizing services of indemnitor); *Yang v. Voyagaire Houseboats*, 701 NW2d 783, 791 (Minn. 2005) (rejecting indemnification because clause was not "clear and unequivocal" as it did not, *inter alia*, contain language specifically referring to negligence or expressly stating that indemnitor will indemnify indemnitee for indemnitee's own negligence); *Ford v. Chicago, Milwaukee, St. Paul and Pacific R.R.*,

---

Moreover, an indemnitee is not entitled to the recovery of attorneys fees incurred prior to any purported tender.  *Seifert v. Regents of Univ. of Mn.*, 505 N.W.2d 83, 87 (Minn. App. 1993).

294 N.W.2d 844 (Minn.1980) (indemnification rejected as limited to negligence of indemnitor, not for indemnitee's own negligence); *Fire Ins. Exchange v. Adamson Motors*, 514 NW 2d 807 (Minn. App. 1994) (same); *cf. Bogatzki v. Hoffman*, 430 N.W.2d 841, 845 (Minn. App. 1988) (indemnification applied to claims of personal injury, wrongful death and property damage); *Minnesota Johnson v. McGough Const.,* 294 N.W. 2d 286, 288 (Minn. 1980), *superseded by statute* (indemnification where provision included "claims for which the Contractor may be, or may be claimed to be, liable"); *Lake Cable Partners v. Interstate Power Co.*, 563 N.W.2d 81 (Minn. App. 1997) (indemnification where provision included "negligence on the part of 'indemnitee' or claimed on the part of 'indemnitee'"); *Oster v. Medtronic,* 428 N.W.2d 116 (Minn. App. 1988) (indemnification where provision stated "regardless of whether or not it is caused in part by a party indemnified hereunder").

The clause at issue resembles the provision in *Yang*.  The *Yang* Court rejected enforcement because the clause was not "clear and unequivocal."  It failed to "fairly apprise" the indemnitor of the obligation to indemnify the indemnitee's own conduct because it failed to specifically refer to negligence or expressly state indemnitor will indemnity for indemnitee's own conduct.  The clause at issue fails upon the same grounds because it does not mention negligence, nor does it expressly mention liability for IRUSA or Seagren's own negligence.  In fact, the clause begins by declaring "[TiZA] shall assume full liability for its activities," and does reference any assumption of liability

for any other entity.[18]   Doc. 74-1, p. 3, ¶ 5.4; Doc. 74-2, p. 3, ¶ 5.4.   As such, indemnification may be found, if at all, by implication, which is not permissible under Minnesota law.  *Minnesota Johnson*, 294 N.W.2d at 288.[19]

Additionally, the clause provides indemnity only to circumstances "arising under this Contract."  While not identical language, the courts have interpreted "arising out of" to mean "originating from," "growing out of," or "flowing from."  *Dougherty v. State Farm*, 699 N.W.2d 741, 744 (Minn. 2005).   Plaintiff's claims against IRUSA and Seagren are focused upon violations of the Establishment Clause, not the Charter Contracts.   In the 2009 Contract - which was not sued upon by Crossclaimants - the indemnity provision was modified by adding the italicized language:  "from any suits, claims, or liability arising under this Contract *or arising from operation of the school*." The addition of this language in early 2009 - at a time when Plaintiff had recently commenced this action - means IRUSA was attempting to insert indemnity for this action where before such indemnity certainly did not exist (though TiZA disputes indemnity under any contract).

---

[18]In a construction context, enforcement of provisions seeking to impose indemnity obligations for the indemnitee's own conduct are prohibited, but agreements to provide insurance for such conduct are permissible.  Minn. Stat. § 337.02, .05(1).  By analogy, TiZA agreed to procure insurance, but only to the extent of tort liability under Minnesota Statutes, chapter 466, and not Section 1983 exposure.  Doc. 74-1, ¶ 12.1; Doc. 74-2, ¶ 12.1.   Accordingly, enforcement of any purported indemnity obligation without a corresponding insurance obligation should rejected by this Court.

[19] The reference to immunity in the clause is irrelevant, as the State legislature may not grant immunity to claims based on Federal law.  *See Howlett v. Rose*, 496 U.S. 356, 375 (1990).

3.      **The Indemnity provisions violate public policy.**

Minnesota law further declines to enforce indemnification clauses that violate

public policy. *See Yang v. Voyagaire Houseboats*, 701 NW 2d 783, 791-92 (Minn. 2005)

(as public policy, lessor of houseboats was similar to an innkeeper, and could not

circumvent duty to protect guests by requiring a release from liability for its negligence

through an indemnification agreement); *see also Zerby v. Warren*, 144, 210 N.W.2d 58,

64 (1973) ("Any agreement which relieves the defendants of the consequences of the

violation of the public duty imposed by [statute] is against public policy); *U.S. v. J&D

Enterprises*, 955 F.Supp. 1153 (D.Minn. 1997) (rejecting contractor's claim against

owner, in part, as against public policy as contractor sought contractual indemnity for

liability resulting from contractor's violation of statute); *National Union v. Gates*, 530

N.W.2d 223, 228 (Minn. App. 1995) (refusing to allow indemnification based upon "the

public policy against indemnifying intentional . . . acts.").

Plaintiff's allegations against IRUSA and Seagren are expressed only as violations

of the Minnesota Charter School Law (MCSL) and the Federal Establishment Clause and

related provisions of the Minnesota Constitution. *See* [Doc. 66, ¶ 56, 58, 61, 62, 65-68,

71-73 (allegations that IRUSA violated Section 124D.10, subds. 3, 6, 8, 17, 23(b)(3) of

the MCSL and the Establishment Clause) and Doc. 66, ¶8, 56(a)-(d), 58, 68 (allegations

that MDE/Seagren violated Section 124D.10, subd. 10, 17 and the Establishment

Clause)].   Under *Zerby* and *J&D Enterprises*, because crossclaimants' indemnification

claims are based on violations of statutes, they are void as against public policy.

Seagren and IRUSA also seek "damages" from TiZA to the extent of an award against them.  [Doc. 74, p. 12, ¶(b); Doc. 96, p. 21, ¶ 4].  Plaintiff, however, has affirmed that it is not seeking damages, but is seeking equitable restitution, and only then from those receiving state aid, which Plaintiff failed to show was received by IRUSA or Seagren.  IRUSA and Seagren's claims for damages must be dismissed.

**CONCLUSION**

Based upon the foregoing, Plaintiff's claims against TiZA and the Individual TiZA Defendants and the crossclaims against TiZA should be dismissed with prejudice and on the merits.

Respectfully submitted,

**JOHNSON & CONDON, P.A.**

January 10, 2011                    s/ Shamus P. O'Meara

Dated: _____    _____

Shamus P. O'Meara (#221454))
Mark R. Azman (# 237061)
M. Annie Mullin (# 0389206)
7401 Metro Boulevard, Suite 600
Minneapolis, MN 55439-3034
(952) 831-6544

**ATTORNEYS FOR DEFENDANTS TAREK IBN ZIYAD ACADEMY, ASAD ZAMAN, ASIF RAHMAN, MAHROUS KANDIL, MONA ELNAHRAWY, MOIRA FAHEY, AND MOHAMED FARID**

871762 (MRA)