UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| American Civil Liberties Union of Minnesota, | Civil No. 09-138 (DWF/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Tarek ibn Ziyad Academy; Islamic Relief USA; Brenda Cassellius, individually and in her capacity as Minnesota Commissioner of Education; Asad Zaman; Asif Rahman; Mahrous Kandil; Mona Elnahrawy; Moira Fahey; and Mohamed Farid, individually and in their capacities as Directors of Tarek ibn Ziyad Academy, | |
| Defendants. | |

Christopher Amundsen, Esq., Ivan M. Ludmer, Esq., Peter M. Lancaster, Esq., Katie C. Pfeifer, Esq., Mark D. Wagner, Esq., and Dustin Adams, Esq., Dorsey & Whitney LLP; and Teresa J. Nelson, Esq., American Civil Liberties Union of Minnesota, counsel for Plaintiff American Civil Liberties Union of Minnesota.

Shamus P. O'Meara, Esq., Mark R. Azman, Esq., and Margaret Ann Mullin, Esq., Johnson and Condon, PA, counsel for Defendant Tarek ibn Ziyad Academy, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohamed Faird, as to all claims asserted against these Defendants.

Sarah E. Bushnell, Esq., and Max H. Kiely, Esq., Kelly & Hannah, PA; and Scott J. Ward, Esq., and Timothy R. Obitts, Esq., Gammon & Grange, PC, counsel for Defendant Islamic Relief USA.

Kathryn M. Woodruff and Tamar N. Gronvall, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Brenda Cassellius.

Benjamin Loetscher, Esq., and Ferdinand F. Peters, Esq., Ferdinand F. Peters, Esq. Law Firm, counsel for movants Muslim American Society of Minnesota, Minnesota Education Trust, and Minnesota Property Holding Corporation.

---

**INTRODUCTION**

This matter is before the Court on a Motion to Disqualify Dorsey & Whitney LLP ("Dorsey") from Representing Plaintiff (Doc. No. 344) brought by Muslim American Society of Minnesota ("MN-MAS"), Minnesota Education Trust ("MET"), and MAS Minnesota Property Holding Corporation ("MAS-MN-PHC") (together, the "Disqualifiers"); and a Motion for Sanctions (Doc. No. 454) brought by Plaintiff the American Civil Liberties Union of Minnesota. The Court denied the motion to disqualify on the record at the hearing on this matter. The reasoning behind the Court's denial of the pending motion is fully set forth below.

**BACKGROUND**

Plaintiff brought this action against Tarek ibn Ziyad Academy, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, Mohammed Farid, (collectively, "TiZA"); Islamic Relief USA; and Brenda Cassellius as the Commissioner of the Minnesota Department of Education. Generally, in this litigation, Plaintiff seeks declaratory and injunctive relief against Defendants, alleging that the operation of TiZA violates the Establishment Clause of the First Amendment to the United States Constitution, the Minnesota Constitution, and the Minnesota Charter School Law.

Defendant Asad Zaman is, and has been since 2003, the Executive Director of TiZA.  (Zaman Aff. ¶¶ 1-2.)   In 2004 and 2005, Zaman was an officer of the Board of Directors and the treasurer for MAS-MN.  (*Id.* ¶¶ 3-4.)   MAS-MN-PHC was a subsidiary of MAS-MN in 2004 and 2005.  (*Id.* ¶ 5.)   MAS-MN PHC has since been transferred to MET.  (*Id.* ¶ 6.)   The Disqualifiers' motion is based on prior contacts between MAS-MN and Dorsey, and more particularly, Zaman's contacts with Dorsey.

In 2004, Zaman became a Hubert H. Humphrey fellow ("HHH Fellow") at the Hubert H. Humphrey Institute of Public Affairs at the University of Minnesota.  (*Id.* ¶ 7.)  At the same time, Lynette Slater Crandall was also an HHH Fellow.  (*Id.* ¶ 8.)   Crandall was and currently is an attorney at Dorsey.   While an HHH Fellow, Zaman met Walter F. Mondale ("Mr. Mondale"), who is also an attorney at Dorsey.  (*Id.* ¶ 8.)

According to Zaman, Mr. Mondale mentored Zaman while Zaman was an HHH Fellow and provided guidance regarding the status of Muslims in the United States generally.  (*Id.* ¶ 9.)   Zaman asserts that Mr. Mondale spoke with Zaman in 2004 to arrange a meeting with imams;[1] that Zaman asked Mr. Mondale, and Mr. Mondale agreed, to appear as a keynote speaker at the 2005 MAS-MN Convention; and that Mr. Mondale

---

[1]    According to Zaman, he arranged for a group of imams to attend a meeting with Mr. Mondale at Dorsey's offices.   (Zaman Aff. ¶ 15.)   Also according to Zaman, at the meeting, Mr. Mondale discussed the idea of awareness training for Minnesota judges with respect to Muslims, and whether and how MAS-MN could be the vehicle to provide the training.  (*Id.*)

wrote a letter to Jimmy Carter to recommend Mr. Carter's attendance at the MAS-MN 2007 convention. (*Id.* ¶¶ 11, 12, 15.)

Zaman asserts that he attended several meetings with Mr. Mondale at Dorsey. At one meeting, Zaman asserts that Mr. Mondale gave him "advice about political issues with the structures of MAS-MN, TiZA, and [Zaman's] relationships with MAS-MN and TiZA" as well as the "legality of the structures of MAS-MN, TiZA, and [Zaman's] relationship to those organizations." (*Id.* ¶¶ 17-19.)[2]

Zaman also asserts that he had conversations with other Dorsey attorneys, including Crandall, regarding the creation of a "Muslim American chamber of commerce to act as a power buy association." (*Id.* ¶¶ 24, 29.) Zaman asserts that he exchanged e-mails with Crandall and later met with Dorsey attorneys to discuss "the various options that MAS-MN wanted to pursue in creating the Muslim American chamber of commerce as a power buy association, and its tax and proposed organizational components." (*Id.* ¶ 29.) After the meeting, Zaman asserts that MAS-MN relied on some of Dorsey's advice, but "proceeded without Dorsey for any further legal services." (*Id.* ¶ 32.)

Dorsey attorneys have submitted sealed affidavit testimony and documents that demonstrate that Dorsey attorneys did have contact with Zaman and did discuss with Zaman and others an entity that would function as a purchasing cooperative. The testimony of the Dorsey affiants, however, disputes Zaman's assertions that Dorsey

---

[2] On at least one occasion, Zaman asserts that he was instructed to park in the client parking section. (*Id.* ¶ 13, 14.)

attorneys provided legal advice. In addition, the record does not reflect that Dorsey billed any time to MAS-MN, Zaman, or any other related entity.

MAS-MN also submitted a supplemental affidavit of Zaman with exhibits under seal and *in camera* for the Court's review. The documents submitted under seal include documents that the Disqualifiers contend demonstrate that Zamam sought legal advice from Dorsey and describe other allegedly confidential communications between Zaman and Dorsey attorneys. (Doc. No. 461.)

## DISCUSSION

I. **Motion to Disqualify**

Disqualification is committed to the trial court's discretion. *See Jenkins v. State of Missouri*, 931 F.2d 470, 484 (8th Cir. 1991); *Cent. Milk Producers Co-op v. Sentry Food Stores*, 573 F.2d 988, 991 (8th Cir. 1978). Disqualification of a party's counsel is an extreme measure and should be imposed only where "absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006). "[T]he party seeking the disqualification of opposing counsel bears the burden of showing that disqualification is warranted." *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998).

The Disqualifiers now move to disqualify Dorsey as the Plaintiff's counsel in this matter, arguing that MAS-MN was a former client of Dorsey, that MAS-MN is entitled to Dorsey's loyalty in accordance with the Minnesota Rules of Professional Conduct, and that Dorsey has breached its duty of loyalty by representing Plaintiff in this matter.

The Minnesota Rules of Professional Conduct govern the attorneys' conduct in this case. *See* D. Minn. L.R. 83.6(d)(2). It is this Court's inherent power, authority, and duty to ensure the administration of justice and the integrity of the litigation process. *See, e.g., Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989). The Disqualifiers assert that Dorsey violated Minnesota Rule of Professional Responsibility 1.9. That Rule reads, in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Minn. R. Prof. Cond. 1.9(a). A party who seeks to disqualify counsel under this rule must demonstrate that: "1) the moving party and opposing counsel actually had a prior attorney client relationship; 2) the interests of opposing counsel's present client are adverse to the movant; and 3) the matters involved in the present underlying lawsuit are substantially related to the matters for which the opposing counsel previously represented the moving party." *Bieter Co. v. Blomquist*, 132 F.R.D. 220, 223 (D. Minn. 1990) (*citing Federal Deposit Ins. Corp. v. Amundson*, 682 F. Supp. 981, 986 (D. Minn. 1988)).

The Court moves directly to the third inquiry, whether the matters involved in the present underlying lawsuit are "substantially related" to the matters for which the opposing

counsel previously represented the moving party.[3]  To demonstrate a substantial relationship, the Disqualifiers must "establish that the relationship between issues in the prior and present cases is patently clear [and] the issues involved have been essentially the same."  *Amundson*, 682 F. Supp. at 988 (quotations omitted).

Based on the Court's review of the record, including the documents submitted by MAS-MN for *in camera* review, the Court concludes that the Disqualifiers have not satisfied their burden of showing that MAS-MN's prior communications with Dorsey are substantially related to the subject matter in the present case.  The facts and circumstances of Dorsey's prior relationship with MAS-MN (even assuming it constituted an attorney-client relationship) related to issues that are distinct from the subject matter of the present case.  In particular, the record demonstrates that the prior relationship involved general discussions related to the United Chamber of Commerce and the possible creation of an organization to act as a "power buyer" and perhaps general information about

---

[3]   The parties disagree as to whether an attorney-client relationship was formed between Dorsey and MAS-MN.  The Disqualifiers assert that MAS-MN approached Dorsey attorneys seeking legal advice about its organizational structure and relationships between it and other entities including MAS-MN PHC and TiZA, that Dorsey provided advice, and that MAS-MN relied on that advice.  The ACLU denies that an attorney-client relationship was ever formed.  The Court notes that the evidence in the record supporting the existence of an attorney-client relationship between MAS-MN and Dorsey is slim.  Even so, the Court assumes for the purposes of this motion only that such a relationship was formed.

MAS-MN.[4]   There is no evidence in the record that directly connects any advice given by Dorsey to the issues raised in Plaintiff's Amended Complaint.   Accordingly, disqualification of Dorsey is not warranted.

**II.     Sanctions**

Plaintiff moves for sanctions against MAS-MN, MAS-MN Holding, MET, and their counsel under Rule 11.   In particular, Plaintiff asserts that sanctions are warranted because the Disqualifiers' motion to disqualify Dorsey is baseless and just one of several "obstructionist" approaches taken by "TiZA and its allies."   (Doc. No. 456 at 2.)

Rule 11 sanctions may follow when a motion is submitted to the court for an improper purpose, "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"; if the motion is not supported by existing law or a nonfrivolous argument for the extension, modification or reversal of existing law; or if the factual contentions contained in the motion lack evidentiary support.   *See* Fed. R. Civ. P. 11(b)(1)-(3).   To satisfy the requirements of Rule 11, an attorney is obligated to conduct a reasonable inquiry into the factual and legal basis for a claim.   *See Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).   In determining whether sanctions are warranted, the court

---

[4]     Plaintiff also argues in its opposition that the Disqualifiers lack standing to disqualify Plaintiff's counsel and that the Disqualifiers waived their right to bring the current motion by waiting so long to bring it.  *See, e.g., Bieter Co.*, 132 F.R.D. at 223 (explaining that a motion to disqualify should be made "with reasonable promptness after a party discovers the facts which lead to the motion").   The Court declines to reach these arguments because the Court denies the motion on the merits.

considers "whether a reasonable and competent attorney would believe in the merit of [the] argument." *Id.* (internal quotations omitted).

Here, the Court concludes that although the Disqualifiers' motion is extremely weak and the delay in bringing the motion is suspect, sanctions are not warranted. Thus, Plaintiff's motion for sanctions is denied.

The Court is greatly concerned about the effect that this contentious litigation is having on the children at the Tarek ibn Ziyad Academy. No one can question the right of individual parties in a lawsuit to zealously and passionately assert their claims and defenses. However, when a school is involved, the adults are responsible for protecting and serving the best interests of the students. Hopefully, what is in the best interests of the children will not be lost or forgotten in the midst of this lawsuit.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The Disqualifiers' Motion to Disqualify (Doc. No. [344]) is **DENIED**.

2. Plaintiff's Motion for Sanctions (Doc. No. [454]) is **DENIED**.


Dated: February 17, 2011          s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge