# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

American Civil Liberties Union of
Minnesota,

Civil No. 09-138 (DWF/JJG)

Plaintiff,

v.

**MEMORANDUM
OPINION AND ORDER**

Tarek ibn Ziyad Academy; Islamic Relief
USA; Brenda Cassellius, in her capacity as
Minnesota Commissioner of Education;
Asad Zaman; Asif Rahman; Mahrous
Kandil; Mona Elnahrawy; Moira Fahey;
and Mohamed Farid, individually and in
their capacities as Directors of
Tarek ibn Ziyad Academy,

Defendants.

_____

Christopher Amundsen, Esq., Ivan M. Ludmer, Esq., Peter M. Lancaster, Esq., Dustin
Adams, Esq., Katie C. Pfeifer, Esq., Mark D. Wagner, Esq., and Shari L J. Aberle, Esq.,
Dorsey & Whitney LLP; and Teresa J. Nelson, Esq., American Civil Liberties Union of
Minnesota, counsel for Plaintiff American Civil Liberties Union of Minnesota.

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Morhman & Kaardal, counsel for
Applicants for Intervention.

Shamus P. O'Meara, Esq., Mark R. Azman, Esq., and Margaret Ann Mullin, Esq.,
Johnson and Condon, PA, counsel for Defendant Tarek ibn Ziyad Academy, Asad
Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohamed
Faird, as to all claims asserted against these Defendants.

Sarah E. Bushnell, Esq., and Max H. Kiely, Esq., Kelly & Hannah, PA; and Scott J.
Ward, Esq., and Timothy R. Obitts, Esq., Gammon & Grange, PC, counsel for Defendant
Islamic Relief USA.

Kathryn M. Woodruff and Tamar N. Gronvall, Assistant Attorneys General, Minnesota
Attorney General's Office, counsel for Brenda Cassellius.

Benjamin Loetscher, Esq., and Ferdinand F. Peters, Esq., Ferdinand F. Peters, Esq. Law Firm, counsel for Movants Muslim American Society of Minnesota, Minnesota Education Trust, MAS-Minnesota Property Holding Company, Blaine Property Holding Company, and Minnesota Education Trust.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendants Tarek ibn Ziyad Academy ("TiZA") and its directors, Asad Zaman, Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohammed Farid (the "Individual Defendants") (collectively, the "TiZA Defendants"); a Motion for Summary Judgment on Crossclaim for Indemnification Against TiZA brought by Defendant Islamic Relief USA ("Islamic Relief"); and a Motion for Summary Judgment on Crossclaim for Indemnification Against TiZA brought by Defendant Commissioner of Education (the "Commissioner").[1]  For the reasons set forth below, the Court grants in part and denies in part the motions.[2]

---

[1]     Together, Islamic Relief and the Commissioner are referred to as the "cross-claimants."

[2]     The Commissioner originally moved for summary judgment on Plaintiff's claims. Plaintiff has since settled its claims against Islamic Relief and the Commissioner.  The Commissioner has withdrawn the portion of her motion for summary judgment directed against Plaintiff's claims, without prejudice to re-file the motion should the settlement not be approved.  Thus the Court only reaches the Commissioner's motion as to her cross-claim for indemnification and denies without prejudice the portion directed against Plaintiffs' claims as moot.

**BACKGROUND**

Plaintiff American Civil Liberties Union of Minnesota ("Plaintiff") is "a

not-for-profit, non-partisan, membership-supported organization dedicated to the

protection of civil liberties."  (Am. Compl. ¶ 4.)  TiZA is a charter school organized

under the Minnesota Charter School Law ("MCSL") with campuses in Blaine and

Inver Grove Heights, Minnesota.  Islamic Relief is a California not-for-profit

organization that acts as TiZA's sponsor.[3]  The Minnesota Department of Education

("MDE") is a state agency charged with carrying out the MCSL and dispersing state

funds.  The MDE was originally named as a defendant, but all claims against the MDE

have been dismissed.  (Doc. No. 60 at 6 n.2.)  The Commissioner is charged with

approval and oversight of charter schools and with certification of schools' entitlement to

state funding.  (*Id*. at ¶ 8.)

This case has already involved extensive motion practice, which will not be

recounted in full here.  Plaintiff brought this action against Defendants seeking

declaratory and injunctive relief based on allegations that TiZA Defendants have used tax

funds to establish a school that promotes the religion of Islam in violation of the

Establishment Clause of the First Amendment to the United States Constitution and the

Minnesota Constitution.  In 2009, TiZA Defendants moved to dismiss Plaintiff's original

complaint.  The Court granted in part and denied in part that motion.  (Doc. No. 60.)  In

---

[3]     Islamic Relief has indicated that it will not be TiZA's sponsor after the 2010-11
school year.

August 2009, Plaintiff filed an Amended Complaint, alleging violations of the

Establishment Clauses of the Minnesota and United States Constitutions.  (Doc. No. 66.)

Both Islamic Relief and the Commissioner brought cross-claims against TiZA for

indemnification.  (Doc. Nos. 74 & 96.)  TiZA Defendants moved to dismiss the Amended

Complaint and for judgment on the pleadings.  By an order dated May 7, 1010, the Court

denied the motion.  (Doc. No. 260.)

The Court now addresses the present motions for summary judgment.

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

Court must view the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank

of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated,

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex

Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*,

92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in

the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*,

47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.      TiZA Defendants' Motion for Summary Judgment

TiZA Defendants move for summary judgment on numerous grounds.  The Court will address each in turn.

### A.      Plaintiff's Authority to Maintain this Action

TiZA Defendants assert that the Plaintiff cannot maintain this action because the ACLU of Minnesota does not exist.  In particular, TiZA Defendants submit that ACLU-MN is the assumed name of Minnesota Civil Liberties Union ("MCLU"), and that Plaintiff failed to file an annual renewal notice with the Secretary of State in 2005 for MCLU.  As a result of that failure, the Secretary of State dissolved MCLU as of January 26, 2006.  (Decl. of Shamus P. O'Meara ("O'Meara Decl.") ¶ 3, Ex. 2.)  TiZA Defendants assert, therefore, that Plaintiff, as the assumed name of a dissolved non-existent corporation, cannot maintain this lawsuit.

Plaintiff responds that a corporate filing lapse does not affect its ability to maintain this suit because it brought the suit in its capacity as a "not-for-profit, non-partisan, membership supported organization."  (Am. Compl. ¶ 4.)  Plaintiff maintains that as an unincorporated association, it has the right to sue in the name of the association.  Plaintiff

also maintains that it has operated continuously as a non-profit, member-supported

organization since its inception.

Federal Rule of Civil Procedure 17 provides in part:

> **(b)** **Capacity to Sue or Be Sued.**  Capacity to sue or be sued is
> determined as follows:
>
> > (1) for an individual who is not acting in a representative capacity,
> >     by the law of the individual's domicile;
> >
> > (2) for a corporation, by the law under which it was organized; and
> >
> > (3) for all other parties, by the law of the state where the court is
> >     located, except that:
> >
> > > (A)     a partnership *or other unincorporated association with*
> > > *no such capacity under that state's law may sue or be sued in*
> > > *its common name to enforce a substantive right existing under*
> > > *the United States Constitution or laws . . .*

Fed. R. Civ. P. 71(b)(1)-(3) (emphasis added).  Further, Minn. Stat. § 540.151 provides in

part:

> When two or more persons associate and act, whether for profit or not,
> under the common name . . .  whether such common name comprises the
> names of such persons or not, they may sue in or be sued by such common
> name, and the summons may be served on an officer or a managing agent
> of the association.

Minn. Stat. § 540.151.  The Eighth Circuit Court of Appeals recognized that this

Minnesota Statute "permits persons associated under a common name to sue under that

name" and that associations can have standing to assert their members' rights.  *Minn.*

*Assoc'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1049-50 (8th

Cir. 2002).

Here, the record establishes that Plaintiff brought this action as a "not-for-profit, non-partisan, membership supported organization" and not in its corporate capacity. The record also establishes that Plaintiff brought this action on behalf of its members. Thus, the Court concludes that Plaintiff's failure to make required corporate filings in a timely manner does not warrant the dismissal of Plaintiff's claims.[4]

### B.    Claim on Behalf of its Purported Members

TiZA Defendants argue that Count I of Plaintiff's Amended Complaint must be dismissed because Plaintiff cannot maintain a § 1983 lawsuit on behalf of its members. TiZA Defendants assert that because § 1983 rights are personal and § 1983 is a civil rights tort statute, an organization may not bring suit to redress the federally-protected rights of its members.

The Court disagrees. In its previous order, the Court concluded that Plaintiff has taxpayer standing to assert its Establishment Clause claims. (Doc. No. 60 at 12.)[5] Further, under Eighth Circuit law, Plaintiff may pursue its § 1983 claims on behalf of its members. In *Coalition for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395, 399

---

[4]     While not determinative, the Court questions TiZA Defendants' delay in raising this argument. TiZA Defendants have filed two prior motions to dismiss, but failed to raise this issue before now.

[5]     In that order, the Court explained that there is a general prohibition against taxpayer standing, and that there is a narrow exception to that general rule—the exception being that a taxpayer will have standing to invoke federal judicial power when that taxpayer challenges congressional taking and spending that violates the Establishment Clause. (Doc. No. 60 at 9 (citing *Flast v. Cohen*, 392 U.S. 83 (1968)).)

(8th Cir. 1985), a nonpartisan, unincorporated coalition of individuals and organizations formed to help minorities and low income persons participate in the political process brought a lawsuit challenging the constitutionality of voting registration policies of the election board. 771 F.2d at 396. The coalition alleged that the challenged policies violated the fundamental constitutional rights of its members to freedom of speech, due process, and equal protection. *Id*. at 398. The Eighth Circuit held that the coalition "has standing on the basis of any injury to its members" and explained that "[h]ere, the Coalition alleged that the Board's refusal to appoint individual Coalition members as deputy registration officials injured them by preventing them from registering new voters" and that this injury was likely to be redressed by the relief requested. *Id*. at 399.

Here, Plaintiff claims that its members have been injured. Specifically, Plaintiff alleges that its members are taxpayers and that their taxes are being used to support the operation of a religious school. (Am. Compl. ¶ 5.) Based on that alleged injury, the Court concludes that Plaintiff has a right to bring its § 1983 claim.[6]

### C.    Claim Under the Minnesota Constitution

In Count II of its Amended Complaint, Plaintiff alleges a violation of the Minnesota Establishment Clause. TiZA Defendants assert that this count should be dismissed because there is no private cause of action under the Minnesota Constitution.

---

[6]    *See also Straights and Gays for Equality (SAGE) v. Osseo Area Schools-District No. 279*, 540 F.3d 911, 916 (8th Cir. 2008) (affirming district court's issuance of a permanent injunction in a § 1983 case brought by an organization to enforce its members' rights under the Federal Equal Access Act).

Plaintiff disagrees and contends that Minnesota courts have recognized claims under Minnesota's Establishment Clause.  In addition, Plaintiff argues that TiZA Defendants' argument is inconsistent with their own position that the Individual Defendants are entitled to the protections afforded by the Minnesota Constitution.

In support of its position, TiZA Defendants cite to *Reihm v. Engelking*, 2007 WL 37799 (D. Minn. 2007), *aff'd* 538 F.3d 952 (8th Cir. 2008); *Guite v. Wright,* 976 F. Supp. 866, 871 (D. Minn. 1997); and *Danforth v. Star Tribune*, 2010 WL 4286242 (Minn. App. Nov. 2, 2010).  While each of these cases stand, generally, for the proposition that Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota Constitution, none of these cases addressed state constitutional claims based on the Establishment Clause.

In contrast, Plaintiff cites to several cases wherein Minnesota courts have recognized the right of a private party to sue under Minnesota's Establishment Clause. *See, e.g.*, *Americans United Inc. v. Indep. Sch. Dist. No. 622*, 179 N.W.2d 146, 155 (Minn. 1970) (considering the merits of a private party's claim under the Minnesota Establishment clause); *Stark v. Indep. Sch. Dist. No. 640*, 938 F. Supp. 544 (D. Minn. 1996), *rev'd on other grounds by* 123 F.3d 1068 (8th Cir. 1997) (same); *Minn. Higher Educ. Facilities Auth. v. Hawk*, 232 N.W.2d 106, 107-09 (Minn. 1975) (considering the merits of a non-profit organization's claim under the Minnesota Establishment Clause); *Minn. Fed'n of Teachers v. Mammenga*, 485 N.W.2d 305, 307-08 (considering teachers union's challenge of state law under Minnesota's Establishment Clause);  *Minn. Fed'n of Teachers v. Mammenga*, 500 N.W.2d 136, 138-39 (Minn. Ct. App. 1993) (same).

The Court concludes that private parties have the right to assert challenges under the Minnesota Establishment Clause.  Therefore, the Court denies TiZA Defendants' motion for summary judgment as to Count II of Plaintiff's Amended Complaint.

### D.        Claim for a Refund of Student Aid

In this lawsuit, Plaintiff seeks "[p]reliminary and permanent injunctive relief requiring Defendants to correct and eliminate establishments of religion by [TiZA] and to refund to the state of Minnesota the pro rata portion of student aid [TiZA] has received by students."  (Am. Compl., Prayer for Relief.)  TiZA Defendants acknowledge that this Court has already determined that Plaintiff's members have taxpayer standing under *Flast v. Cohen*, 392 U.S. 83 (1968) (Doc. No. 60), but maintain that Plaintiff cannot recover a refund of student aid under *Flast*.

The Court disagrees.  In *Americans United for Separation of Church and State v. Prison Fellowship Ministries*, 509 F.3d 406 (8th Cir. 2007), the Eighth Circuit Court of Appeals reviewed the district court's order requiring certain religious groups to repay funds received by the state in violation of the Establishment Clause.  509 F.3d at 426-27. The Eighth Circuit determined that the district court abused its discretion in granting recoupment for services that were rendered prior to the district court's order finding an Establishment Clause violation.  *Id*. at 428.  The Eighth Circuit explained that the district court failed to properly consider the relevant factors and testimony, including factors demonstrating good faith on the part of the state legislature and the views of prison

administrators. *Id*. at 427-28. The Eighth Circuit did not, however, hold that such equitable relief was never available under *Flast*.[7] Accordingly, the Court denies TiZA Defendants' motion for summary judgment on Plaintiff's claim for relief seeking a refund to the state of the pro rata portion of student aid received by TiZA.

### E.   Official Capacity Claims

TiZA Defendants seek to dismiss Plaintiff's claims against the Individual Defendants in their official capacities because they are redundant of the claims against TiZA. In support, TiZA Defendants rely on *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254 (8th Cir. 1998), and numerous cases from other circuits and districts.[8] Upon review, these cases stand for the proposition that a court may dismiss official capacity claims against individuals when those claims are redundant because, for example, they are equivalent to the claims against the government entity. Here, Plaintiff has alleged that the Individual Defendants have taken actions as individuals that violate the law. For example, Plaintiff alleges that Individual Defendants submitted false statements hiding

---

[7]   TiZA Defendants rely on *Lakowski v. Spellings*, 546 F.3d 822, 827-28 (7th Cir. 2008), for the proposition that the *Flast* exception permitting taxpayer standing does not extend to suits for retrospective monetary relief. *Lakwoski*, however, is distinguishable from the present case. In *Lakowski*, the Seventh Circuit held that federal taxpayers challenging a specific congressional earmark under the Establishment Clause could not pursue the remedy of restitution of grant money from a party intermediary who distributed the funds to a private grant recipient. *Id*. at 828. Here, however, TiZA Defendants are the end recipients of the state funds for which Plaintiff seeks restitution.

[8]   TiZA Defendants also cite to *Will v. Michigan*, 491 U.S. 58, 71 (1989), for the general proposition that "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."

conflicts of interest with religious organizations in lease aid applications with the state;

engaged in campaigns to hide their status as leaders of the Muslim organization that was

TiZA's landlord; and solicited funds for school projects in the name of Islam.  (Decl. of

Katie C. Pfeifer (Doc. No. 550), App. Tabs 147, 149, 203, 204, 208, 209, 562, 607, 638

& Tab AA, Tab B (Dep. of Asad Zaman ("Zaman Dep.") at 372-76; 379-81, 709-11,

725-26,); Tab. L (Dep. of Dr. Ahmad El Bendary ("El Bendary Dep.") at 73-79); Tab M

(Dep. of Luke Amundson ("Amundson Dep.") at 210-11).)[9]  The Court concludes that the

claims against the Individual Defendants in their official capacities may properly remain

before the Court and that allowing these claims to proceed will not create any additional

burden to the Court or the parties.  Thus, the Court denies TiZA Defendants' motion for

summary judgment as to Plaintiff's claims against the Individual Defendants in their

official capacities.

### F.     Claim for Prospective Injunctive Relief

TiZA Defendants assert that Plaintiff's request for prospective injunctive relief

cannot be granted against any of the Individual Defendants in their individual capacities.

In particular, TiZA Defendants argue that Plaintiff's request that the Court require TiZA

---

[9]     Plaintiff relies on the Declaration of Katie C. Pfeifer, which was submitted in
support of the Stipulated Facts submitted by Plaintiff, Islamic Relief, and the
Commissioner.  (Doc. No. 550.)  Plaintiff does not submit the Stipulated Facts
themselves as evidence in opposition to the TiZA Defendants' motion for summary
judgment, but rather relies on the documents and testimony underlying the Stipulated
Facts, which are cited in and attached to the Pfeifer Declaration.

Defendants to eliminate the alleged establishment of religion may not be granted against any official in his or her individual capacity.

Plaintiff argues that it is entitled to obtain injunctive relief against the Individual Defendants in their individual capacities.  In particular, Plaintiff asserts that the Individual Defendants have participated in and controlled various religious organizations that have turned TiZA into a religious school, and that this individual participation is an important element to be considered.

There is no dispute that under Eighth Circuit law, public officials may be sued under § 1983 in their official or individual capacity, or both.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  A plaintiff, however, may only obtain damages against an individual defendant in his or her individual capacity, but not in the individual's official capacity.  *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).  A plaintiff may obtain injunctive relief against an individual defendant in his or her official capacity.  *Id*.  However, as to the question of whether a plaintiff can obtain injunctive relief under § 1983 against an official in his or her individual capacity, both parties acknowledge that they were unable to locate an Eighth Circuit case on point.  TiZA Defendants instead rely on *Greenwalt v. Indiana Department of Corrections*, 397 F.3d 587 (7th Cir. 2005) and various district court cases outside of Minnesota.  In *Greenwalt*, the court held that § 1983 does not permit injunctive relief against state officials sued in their individual capacity.  397 F.3d at 589.  TiZA Defendants argue that the same holding should apply here.

The Court agrees with Plaintiff that the nature of relief sought by Plaintiff in this case and the alleged roles of the Individual Defendants at TiZA and other religious organizations make this case unique.  Here, Plaintiff alleges that the Individual Defendants participated in and controlled the activities of several religious organizations that influenced the various school policies at TiZA that Plaintiff now contends endorse and promote the religion of Islam.  Thus, this case involves allegations regarding actions taken by the Individual Defendants both within and outside the scope of their official duties.  The Court concludes that it is appropriate to allow Plaintiff's claim for prospective injunctive relief against the Individual Defendants in their individual capacities to proceed.

### G.    Claims Against Individual Defendants for Refund of Student Aid

TiZA Defendants seek to dismiss any claim against the Individual Defendants, insofar as the claim seeks a refund of student aid from those defendants individually.  TiZA Defendants assert that while Plaintiff demands that Defendants return the pro rata portion of student aid TiZA received from the state, Plaintiff's Executive Director stated in his deposition that Plaintiff is not seeking any refund from TiZA Defendants in their individual capacities, and that during an oral argument before the Court in March 2010, counsel for Plaintiff indicated that Plaintiff was only seeking such refund from TiZA Defendants who actually received student aid.

Plaintiff acknowledges that it is not seeking a claim for refund of student aid for any individual defendant who did not receive student aid funds.  However, Plaintiff maintains that Individual Defendant Zaman has received wrongful financial benefits that

should be refunded.  For example, Plaintiff asserts that the record demonstrates that while working as an administrator for TiZA on a part-time basis, Zaman received certain financial benefits, such as a full-time salary and payment to attend the Carlson School of Business at the University of Minnesota to obtain an MBA.  (Pfeifer Decl., App. Tabs 632, 633 & Zaman Dep. at 874, 878-79.)  Plaintiff maintains that these and other funds should be refunded.

TiZA Defendants assert that Zaman's compensation package is below the state charter school average for like-sized schools.  TiZA Defendants also assert that Plaintiff has not provided any evidence that Zaman received student aid in violation of the Establishment Clause.

The Court concludes that Plaintiff has pointed to sufficient evidence so as to create a factual issue as to whether Zaman has received wrongful financial benefits that should be refunded.  For that reason, the Court denies TiZA Defendants' motion for summary judgment as to Plaintiff's claim for a refund of student aid from Zaman.[10]

### H.    Claims Against Individual Defendants for Attorney Fees

TiZA Defendants seek to dismiss any purported claim for attorney fees as asserted against the Individual Defendants in their individual capacities.  In its Prayer for Relief in its Amended Complaint, Plaintiff seeks "Plaintiff's attorneys' fees and costs of suit

---

[10]    Because Plaintiff did not direct the Court to any record evidence supporting a claim for a refund against any of the other Individual Defendants, the Court considers such claims to have been waived or withdrawn.  Accordingly, the Court dismisses any claim for a refund of student aid as asserted against defendants Asif Rahman, Mahrous Kandil, Mona Elnahrawy, Moira Fahey, and Mohammed Farid.

pursuant to 42 U.S.C. § 1988, against the Commissioner, TIZA, and Islamic Relief."
(Am. Compl. at 21.)  Plaintiff is not seeking an award of attorney fees against the
Individual Defendants.  Because no such claim has been made, the Court denies this
portion of TiZA Defendants' motion for summary judgment as moot.

### I.  Claims Against Individual Defendants for Deprivation of Constitutional Rights

TiZA Defendants assert that Plaintiff has failed as a matter of law to establish that
individual conduct on the part of any of the Individual Defendants caused any alleged
deprivation of the taxpayers' constitutional rights.

Through this lawsuit, Plaintiff asserts that TiZA and the Individual Defendants
established school policies that endorse and promote Islam and have used tax funds to
establish a pervasively religious school.  Plaintiff further alleges that the Individual
Defendants have close ties with several religious organizations, including the Muslim
American Society of Minnesota ("MAS-MN").  Plaintiff further contends that the record
establishes that the Individual Defendants are linked by a complex set of personal,
corporate, and operational relationships with MAS-MN and other religious organizations,
such as Minnesota Education Trust ("MET"), MAS-MN Holding, and the Blaine
Property Holding Corporation.

With respect to these organizations, Plaintiff points to record evidence supporting
the following:  MAS-MN is a Minnesota not-for-profit organization whose principal goal
is to "attain the pleasure of Allah (God)" by, without limitation, presenting the message
of Islam to Muslims and non-Muslims, helping Muslims understand, practice, and live

the religion of Islam, promoting family values in accordance with Islamic teachings, and

promoting the Arabic language and the seminal teaching of the Quran.  (Pfeifer Decl.,

App. Tab EE.)  MAS-MN Holding was at all relevant times a subsidiary of the national

Muslim American Society ("MAS").  MAS-MN Holding was also the landlord for

TiZA's Inver Grove Heights Campus.  MAS-MN purported to transfer MAS-MN

Holding, including its ownership of the Inver Grove Heights Campus, to MET in or about

August 2007 through a trust agreement.  The trust agreement provided that the

Inver Grove Heights Campus would "only be used for charitable, educational, religious &

Islamic purposes within the limits ordained by the Quran and Sunnah and may not be

used for any activity that may violate the Islamic moral, social, religious and spiritual

norms, regulations and guidance as determined by MET."  (Pfeifer Decl., App. Tab 283.)

MET is the landlord for TiZA's Blaine Campus.  In May 2008, MET transferred

the Blaine Campus to its subsidiary, Blaine Holding.  In an agreement with Blaine

Holding, MET agreed to "promote the establishment and operation of schools in pursuit

of" goals that include (1) the presentation of the message of Islam; (2) the promotion of

family values in accordance with Islamic teachings; and (3) the promotion of the Arabic

language and the seminal teachings of the Quran.  (Pfeifer Decl., App. Tab 238.)  Blaine

Holding later transferred the Blaine Campus back to MET.

Plaintiff's allegations are lodged against both TiZA and the Individual Defendants.

Plaintiff asserts that as a legal entity, TiZA cannot act except through the individuals who

operate the school and that the Individual Defendants' actions informed and directed the

policies and direction of the school.  Plaintiff focuses on the Individual Defendants'

respective roles on the TiZA Board of Directors (the "TiZA Board") and as officers for

TiZA, as well as their positions at related Muslim organizations (including TiZA's

co-tenant and landlord) with which Plaintiff asserts TiZA has effectively merged.  The

parties have directed the Court to record evidence relevant to the Individual Defendants'

involvement with TiZA and the allegedly related religious organizations.  The Court will

summarize the record evidence, in the light most favorable to Plaintiff, with respect to

each Individual Defendant in turn.

*Asad Zaman*

Zaman has been the Executive Director of TiZA since 2003 and a member of the

TiZA Board from its formation until June 2009.  As a member of the TiZA Board, Zaman

served as Chairman, Secretary, and Treasurer.  From the time of TiZA's founding until at

least mid-2008, Zaman also acted in some capacity at MAS-MN—including as an

"Active Member," President, Vice-President, Secretary, and Treasurer.[11]  In addition,

Zaman served as the secretary of MET.

*Asif Rahman*

Rahman has been a member and/or trustee of and a disbursement authorizer for

TiZA.  Rahman has also served as the Chair and President of MET since its formation in

2007, and President and Chair of the Board of MAS-MN Holding.  Rahman is also a

---

[11]    Plaintiff has pointed to record evidence that Zaman resigned as an officer and
board member of MAS-MN on August 1, 2008, but that between 2008 and 2010, Zaman
continued to communicate using a MAS-MN e-mail address.

member of the Board and an officer of Blaine Holding.  Rahman has also been an officer of the Islamic Association of the Twin Cities.

*Mahrous Kandil*

Kandil was a trustee, Director, Secretary, and eventually the Chair of the Board at TiZA.  Kandil is the current chair of the TiZA Board and the Blaine Campus Director. For much of 2008, Kandil served as a member of the TiZA Board, director of the Blaine campus, and the President of MAS-MN.  Kandil has been an "Active Member," a member of the board of directors, and a treasurer at MAS-MN.  Kandhil resigned from MAS-MN at the end of 2008.  Kandil was also an incorporator of MET, and served as the MET's vice president and officer in 2007.  Kandil signed on behalf of MET on the purchase agreement for the Blaine Campus.  Kandil also served as a director of MAS-MN Holding.

*Mohamed Farid, Moira Fahey, and Mona Elnahrawy*

The record establishes that Farid was a founder of TiZA and current member of the TiZA Board; Moira Fahey is a trustee of TIZA and member of theTiZA Board; and Mona Elnahrawy is a member of the TiZA Board.

Based on its review of the record, the Court concludes that, viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Zaman, Rahman, and Kandil are individually liable for the alleged constitutional violations at TiZA.  However, the Court concludes that there is insufficient evidence in the record to raise a genuine issue of material fact as to whether Farid, Fahey, and Elnahrawy are individually liable.  The Court therefore grants TiZA Defendants' motion for summary

19

judgment only as to the claims against Farid, Fahey, and Elnahrawy, in their individual capacities.[12]

### J.      Establishment Clause Violation

In its Amended Complaint, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Establishment Clause of the First Amendment to the U.S. Constitution.  To prevail on a claim under § 1983, a plaintiff must demonstrate that a defendant acted under the color of state law and that his or her actions deprived a plaintiff of a constitutional or federal statutory right.  *See Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).  The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. CONST. amend. I.

The parties agree that the applicable test for evaluating whether state action has violated the Establishment Clause is the test established in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).  "In order to satisfy the *Lemon* test, a challenged governmental action must (1) have a secular purpose, (2) not have the primary principal effect of advancing religion, and (3) not foster an excessive entanglement with religion." *Lemon*, 403 U.S. at 612.  *Accord Stark*, 123 F.3d at 1073.  With respect to the first prong, the

---

[12]      The holding on these claims also informs the Court's ruling in Section II.F above, wherein the Court determined that Plaintiff's claim for injunctive relief against the Individual Defendants in their individual capacities could proceed.  In light of the Court's conclusion that there is insufficient evidence in the record to raise a genuine issue of material fact as to whether Farid, Fahey, and Elnahrawy are individually liable, Plaintiff's claim for injunctive relief against them in their individual capacities is also dismissed.

Court reviews both the express language of the questioned policy and the motivations behind the policy. *See Florey v. Sioux Falls Sch. Dist.*, 619 F.2d 1311, 1314-15 (8th Cir. 1980). With respect to the second prong, the Court considers whether the primary effect of the policy advances religion. *Lemon*, 403 U.S. at 612. For a law to have forbidden "effects," it must be fair to say that the government has advanced religion through its own activities and influence. *Stark*, 123 F.3d at 1074-75. The third prong requires the Court to consider whether the state must engage in continuing administrative supervision of nonsecular activity. *See, e.g.*, *id.* at 1075.

Plaintiff asserts that TiZA's practices in combination establish a pervasively sectarian atmosphere for the purpose of promoting the single religion of Islam. Plaintiff asserts that these practices include TiZA's school lunch program, school calendar, carpeted area, transportation schedule, school logo, and school name. In addition, Plaintiff contends that there is record evidence that TiZA's motivation from the start has been to establish a Muslim school with public funds, and that this intent bears on the *Lemon* analysis. In support, Plaintiff directs the Court to portions of the record that it claims establish that Defendants intended to and succeeded in creating a Muslim school with public funds. This record contains evidence of, but not limited to, the following:

- In 2002, an agent for MAS purchased TiZA's Inver Grove Heights Campus, and entered into an agreement that read in part:

  "It is not the intent of the parties to preclude a charter school that is geared towards providing Muslim culture education to children of Muslim American Society members & supporters. . . ."

  . . .

> Buyer shall use the Property to provide education to people of the
> Muslim Religion. Buyer agrees not to compete with Independent
> School District No. 199 by not taking any of their public school
> children.  Parents . . . of children of the Muslim faith have the right
> to freely transfer their children between Buyer and Independent
> School District No. 199.

(Pfeifer Decl., App. Tab A (Dep. of Mahdi Nur) at 64, 65; App. Tab 288.)

- In 2007, MAS-MN transferred its purported subsidiary MAS-MN Holding, including ownership of the Inver Grove Heights Campus, to MET, through an Islamic trust agreement.  The trust agreement provided in part that the parties "shall ensure that the REAL PROPERTY shall only be used for charitable, educational, religious & Islamic purposes within the limits ordained by the Quran and Sunnah and may not be used for any activity that may violate the Islamic moral, social, religious and spiritual norms, regulations and guidance as determined by MET." (*Id*. App. Tab 283.)

- MAS-MN distributed brochures in connection with its annual conferences. The brochures also contained applications for TiZA which indicated that TiZA is dedicated to "Preserving Our Values & Achieving Academic Excellence."  By way of example, one such brochure read in part:

ESTABLISHING ISLAM IN MINNESOTA

*Did you know that MAS-MN*
. . .
- Houses a full-time school
. . .
- Provides after-school Islamic learning weekdays at the MAS Center

(Pfeifer Decl., App. Tab. 136.)  Another brochure read in part:

ESTABLISHING ISLAM IN MINNESOTA

*Did you know that MAS-MN*
. . .
- Operates four masjids in the Twin Cities
- Operates the MAS-MN Community Center in Inver Grove Heights
- Houses a full-time school
. . .
- Provides after-school Islamic learning weekdays at the MAS Center

. . .

**Tarek ibn Ziyad Academy**

- An integral component of the comprehensive MAS Community Center
- A full-time elementary school
- Currently serves over 190 students
- Free tuition for all students
- Free bus service to most locations in the Twin Cities
- Comprehensive Arabic language program
- Strong academic program
- Licensed teachers

(Pfeifer Decl., App. Tab. 525.)

- Zaman allowed students at TiZA assemblies to chant "Allahu Akbar," which means "God is Great" in Arabic and is repeated in Islamic Prayers.

- Curriculum materials for the Arabic language program contained religious instruction.  (Decl. of Samer Ali ("Ali Decl.") ¶ 1, Ex. A.)

- TiZA serves halal (pork-free) food to its students and has instructed parents not to send pork, gelatin, lecithin, or milk/dairy products to school with their children.  (Pfeifer Decl., App. Tabs. 119, 122, 415.)

- An Islamic school would serve halal food because it is a Quranic injunction.  (Ludmer Decl. ¶ 3, Ex. B, Report of Dr. Shadee Elmasry, Ph.D. ¶ 3C.)

- TiZA uses a carpeted area on the lower level for student prayer; some teachers refer to the carpet as a "musallah carpet"[13]; tape has been used on the carpet to indicate the direction of Mecca while praying.  (Pfeifer Decl., App. Tabs 105, 106, 398; App. Tab O (Dep. of Tasia Islam ("Islam Dep.") at 86-89); App. Tab G (Dep. of Moira Fahey ("Fahey Dep.") at 96-99, 106-7, 110-12, 143-44); (App. Tab T (Dep. of James Froehle ("Froehle Dep.") at 43-45, 100).)

---

[13]   "Musallah" means "prayer area."  (Dep. of Tasia Islam ("Islam Dep.") at 87.)

- Lesson plans for TiZA's Arabic classes indicate the days surrounding significant Islamic celebrations or "Eids" and on such days class time is allotted for activities such as coloring pages "on the occasion of Eid," and writing "[s]entences for Eid greeting cards on the occasion of the Holy Eid al-Adha" including phrases "May God Bless and Forgive Him."  (Ali Decl. ¶ 2, Ex. A at 4-6.)

Plaintiff also points to evidence in the record that it claims shows that the school logo incorporates religious symbolism (Pfeifer Decl, App. Tabs 120, 637); the school name is based on a historical figure who dramatically expanded the Islamic empire into the west in the 8th century (Ali Decl. ¶ 1, Ex. A at 33); that TiZA's bus service, which only provides after-school service forty-five minutes after the end of the school day, enables TiZA to provide Islamic instruction through an after-school Islamic Studies program provided by MAS-MN on TiZA's campus; and that through a series of lease agreements, TiZA has paid increasing rent for less space and has spent public money on capital improvements that provide a windfall for MET and MAS-MN.

TiZA Defendants assert that the school policies to which Plaintiff objects do not violate the Establishment Clause as a matter of law.  In particular, TiZA Defendants assert that Plaintiff cannot, as a matter of law, show that TiZA's transportation, school lunch program, calendar, lease agreement, use of carpeted area, use of titles, school logo, or school name are unconstitutionally impermissible.  TiZA Defendants assert that all of the above policies have a secular purpose, do not principally or primarily enhance religion, and do not foster an excessive entanglement with religion.

For example, TiZA Defendants assert that its after-school bus schedule allows the school to save money because it uses "off-peak" busing hours, while also allowing

students to participate in after-school programs, including Boy Scouts and Girl Scouts. (O'Meara Decl. ¶ 12, Ex. 11.)  TiZA Defendants also contend that its school lunch program simply accommodates the nutritional demands of its students and their parents, and complies with the Federal School Lunch Program, which mandates that student food preferences be considered in developing menu offerings.  In addition, TiZA Defendants assert that the school calendar does not favor religion and that by accommodating Muslim students, it avoids excessive absences; its leases are not religious, but reflect prudent secular financial planning; the carpeted area is also used for numerous secular purposes and is not a "prayer rug"; TiZA's name does not promote religion; and that there is no evidence that TiZA's alleged religious activities have caused excessive oversight by the MDE.

Viewing the record in the light most favorable to Plaintiff, the Court determines that a reasonable juror could conclude that TiZA's practices establish a pervasively sectarian atmosphere for the purpose of promoting Islam.  In particular, a reasonable juror could conclude that TiZA was founded specifically to create a religious school and that elements of its operation have the primary principal effect of advancing the religion of Islam.  Accordingly, the Court denies TiZA Defendants' motion for summary judgment on Plaintiff's Establishment Clause claims.

## III.    Indemnification

In this action, both the Commissioner and Islamic Relief have asserted cross-claims for indemnification against TiZA.  TiZA Defendants, Islamic Relief, and the

Commissioner all move for summary judgment on the asserted cross-claims for indemnification.

The MCSL requires a charter school to have a sponsor or authorizer. "The authorization for a charter school must be in the form of a written contract signed by the authorizer and the board of directors of the charter school." Minn. Stat. § 124D.10, subd. 6 (6). In 2003, Islamic Relief and TiZA entered into a Charter School Contract (the "Contract"). (Aff. of Sara E. Bushnell ("Bushnell Aff.") ¶ 4, Ex. C.) The Contract has been renewed twice, first in 2006 and most recently in March 2009. (*Id.* ¶¶ 5 & 6, Exs. D & E.)[14] Section 5.4 of the both the 2003 and 2006 version of the Contract reads:

> The CHARTER SCHOOL shall assume full liability for its activities and shall indemnify and hold harmless the Commissioner and the Sponsor, its officers, and their agents and employees from any suits, claims, or liability arising under this Contract. The parties recognize and agree that the Commissioner and the Sponsor are immune from liability under this Contract under Minnesota Statutes section 124D.10, subdivision 25 (1994), as amended, and this paragraph is not intended to modify or otherwise affect that provision or any other law.

(*Id.* ¶¶ 4, 5, Exs. C & D at § 5.4.)[15] The Contract also requires that TiZA be "nonsectarian in its programs, admission policies, employment practices and all other purposes." (*Id.* at § 1.2.)

---

[14]   This action was commenced prior to the March 2009 renewal of the Contract.

[15]   Section 5.4 of the 2009 version of the Contract reads:

> The SCHOOL shall assume full liability for its activities and shall indemnify and hold harmless the SPONSOR, its officers, agents and employees from any suits, claims, or liability arising under this Contract or

(Footnote Continued on Next Page)

This lawsuit was commenced on January 21, 2009.  On July 29, 2009, Islamic

Relief sent a letter to TiZA that read in part:

> Re:     MnACLU v. TIZA, et al.
>         Request for Indemnification and Hold Harmless
>
> Pursuant to Section 5.4 of the Charter School Contract, dated June 16, 2006
> ("Contract"), on behalf of [Islamic Relief], I write to assert [Islamic
> Relief's] right to seek indemnification from [TIZA] for its defense of the
> lawsuit and hold it harm[l]ess.  As the lawsuit . . . is based upon the
> Contract, TIZA is obligated to indemnify and hold [Islamic Relief]
> harmless from such claims.  As such, I respectfully request that TIZA
> immediately notify its insurance carrier of [Islamic Relief's] claims against
> TIZA.  [Islamic Relief] will file a Cross-claim for indemnification and for
> TIZA to hold it harmless, based upon the Contract.

(Decl. of Timothy Obitts ("Obitts Decl.") ¶2, Ex. 1.)

On July 30, 2009, the Commissioner sent a letter to counsel for TiZA:

> By this letter, I am notifying [TiZA] that I seek to preserve my rights, if
> any, as well as the rights of my officers, agents and employees of the state
> of Minnesota, for indemnification under section 5.4 of the Charter School
> Contract (effective July 1, 2006) between Islamic Relief and TiZA.
>
> Please notify your insurance company accordingly.

(Aff. of Kathryn M. Woodruff ("Woodruff Aff.") ¶ 2, Ex. A.)

---

(Footnote Continued From Previous Page)

> arising from operation of the school.  The parties recognize and agree that
> the SPONSOR is immune from liability under this CONTRACT under the
> ACT as amended, and this paragraph is not intended to modify or
> otherwise affect that provision or any other law.

(*Id*. ¶ 6, Ex. E at § 5.4.)

Both Islamic Relief and the Commissioner asserted cross-claims against TiZA for indemnification.  TiZA Defendants deny that the cross-claimants are entitled to indemnification.  In February 2010, TiZA Defendants moved for judgment on the pleadings as to the cross-claims for indemnification.  The Court denied that motion. (Doc. No. 260.)

On December 28, 2010, Islamic Relief advised TiZA that it had reached the terms of a settlement in principle with Plaintiff, which included a payment of $267,500 in professional fees and disbursements.  (Aff. of Sarah E. Bushnell ("Bushnell Aff.") ¶ 10, Ex. I.)  Islamic Relief also sought confirmation from TiZA that TiZA would honor its obligation to indemnify Islamic Relief for the settlement payment plus attorney fees incurred since Islamic Relief tendered its defense to TiZA or, in the alternative, a proposal from TiZA to defend Islamic Relief going forward plus a commitment to indemnify Islamic Relief from any judgment it may suffer in excess of the proposed settlement amount.  (*Id*.)  TiZA declined.

TiZA Defendants assert that they are entitled to summary judgment on the indemnification cross-claims because the cross-claimants failed to tender the defense to TiZA; the cross-claimants may not be indemnified for their own conduct; and the indemnity provision violates public policy.  Islamic Relief asserts that it is entitled to summary judgment on its indemnification claim because the record establishes that it tendered its defense to TiZA and TiZA's contractual agreement to indemnify Islamic Relief is enforceable.  The Commissioner similarly argues that there are no genuine disputes about the Commissioner's entitlement to indemnification from TiZA, and that

the only remaining question is the dollar amount, which cannot be determined until litigation costs are final.

### A.    Tender

"A tender of defense is a condition precedent to the creation of an obligation to indemnify." *Seifert v. Regents*, 505 N.W.2d 83, 87 (Minn. App. 1993).  TiZA Defendants argue that both Islamic Relief and the Commissioner failed to tender the defense to TiZA.  Islamic Relief and the Commissioner contend that their respective July 2009 letters satisfy this condition precedent.  TiZA Defendants acknowledge that Islamic Relief and the Commissioner sent their July 2009 letters, but contend that the letters failed to request a defense and that this failure is fatal to their demand for indemnity.

The Court concludes that, as a matter of law, both Islamic Relief's and the Commissioner's July 2009 letters constitute a tender of defense and satisfy the condition precedent.  In particular, Islamic Relief's July 2009 letter notes in the subject line that the letter was a "Request for Indemnification and Hold Harmless" and specifically states that Islamic Relief was asserting its "right to seek indemnification from [TiZA] for its defense of the lawsuit and to hold it harm[l]ess."  (Obitts Decl. ¶ 2, Ex. 1.)  This letter unambiguously asserts Islamic Relief's right for indemnification under the Contract and requests that TiZA provide a defense and hold Islamic Relief harmless.  The Court concludes that this constitutes notice and tender to TiZA that Islamic Relief was asserting its rights under the Contract and requesting that TiZA provide for its defense.  Similarly, the Court concludes that TiZA had notice of its obligation to indemnify the Commissioner.  In her July 2009 letter, the Commissioner notified TiZA that she

intended to preserve her rights for indemnification under the Contract and requested that

TiZA notify its insurance company.

## B.      Enforceability

The Court next examines the enforceability of the indemnification clause.  The

indemnification clause here is enforceable if the clause "(1) is not ambiguous; (2) does

not release intentional, willful, and wanton acts; and (3) does not violate public policy."

*Myers v. Lutsen Mts. Corp.*, 587 F.3d 891, 894 (8th Cir. 2009). [16]

---

[16]      Contracting parties may protect themselves from liability through an
indemnification or exculpatory clause.  *See Anderson v. McOskar Enters., Inc.*, 712
N.W.2d 796, 799-800 (Minn. Ct. App. 2006).  While indemnification and exculpatory
clauses differ in form, "the substantive effect of each to shift liability operates essentially
the same . . . and they are usually given the same treatment by the courts." *Schlobohm v.
Spa Petite, Inc.*, 326 N.W.2d 920, 922 n.3 (Minn. 1982).

TiZA Defendants, however, assert that the legal analysis of exculpatory clauses
and indemnification clauses are different, and that the analysis of the contested
indemnification clause here should focus on whether the clause provides indemnification
for the cross-claimants' own negligence.  In support, TiZA Defendants rely heavily on
*Yang v. Voyagaire Houseboats*, 701 N.W.2d 783 (Minn. 2005), for the proposition that
indemnification agreements are subject to greater scrutiny because they release negligent
parties from liability but also may shift liability to innocent parties.  *Yang*, however, was
decided on very different facts that involved contractual indemnification between the
provider of a public service and a private individual, wherein the lessor of a houseboat
attempted to shift liability for its own negligence that resulted in personal injuries to a
private individual.  701 N.W.2d at 792.  Here, the record establishes that TiZA
Defendants drafted the indemnification provision, that there is no disparity of bargaining
power between the parties, and that the indemnification clause in Section 5.4 does not
shift liability from a negligent party to an innocent party.  Because of the significant
factual differences, *Yang* does not control the Court's evaluation of the indemnification
clauses in this case.

Consistent with the Court's previous ruling on TiZA Defendants' motion for judgment on the pleadings, the Court concludes that the plain language of Section 5.4 requires TiZA to indemnify and hold harmless both the Commissioner and Islamic Relief for claims arising under the Contract.  In this lawsuit, Plaintiff asserts that Defendants violated state and federal law by failing to ensure that TiZA operated in a secular and nonsectarian manner.  Section 1.2 of the Contract plainly requires that TiZA be "nonsectarian in its programs."  (¶ 1.2.)  The Court concludes that Section 5.4 therefore encompasses Plaintiff's allegations.

Also consistent with the Court's previous ruling, the Court determines that Section 5.4 does not violate public policy.  In so determining, the Court considers (1) whether there was a disparity of bargaining power between the contracting parties; and (2) the type of service being offered or provided through the contract.  *Myers*, 587 F.3d at 894-95.  To show that Section 5.4 violates public policy, TiZA Defendants must demonstrate that there was a great disparity in bargaining power, that there was not an opportunity for negotiation, and that the services could not be obtained elsewhere.  *See Schlobohm*, 326 N.W.2d at 924-25.  Here, a review of the record demonstrates that there was neither a disparity of bargaining power between contracting parties, nor a lack of opportunity to negotiate.  In addition, the record establishes that Section 5.4 actually promotes the policy of the state of Minnesota, which provides that charter school sponsors and the Commissioner should not be subject to liability arising from sponsorship.  Minn. Stat. § 124D.10, subd. 25.

For the above reasons, the Court concludes that both Islamic Relief and the Commissioner are entitled to indemnification under the Contract.

## C.    Settlement Payment to Islamic Relief

Islamic Relief seeks indemnification for the settlement agreement between it and Plaintiff.  TiZA Defendants argue that Islamic Relief may not recover any of its settlement payment because Islamic Relief cannot establish that the settlement was reasonable and made in good faith.  In support, TiZA Defendants assert that there can be no enforcement of a settlement because Islamic Relief has failed to produce evidence of the settlement terms by refusing requests to disclose the settlement terms.

Plaintiff has moved the Court for confirmation of its settlement with Islamic Relief and the Commissioner.  That motion is scheduled to be heard before the Court on April 29, 2011.  The Court defers ruling on the issue of whether the settlement was reasonable and made in good faith until after a decision is made on the motion for confirmation of settlement.[17]

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

---

[17]    Islamic Relief also requests that the Court direct entry of a final judgment as to Islamic Relief's cross-claim for indemnification against TiZA under Rule 54(b).  The Court also declines to rule on this portion of the motion until a decision is made on the motion for confirmation of settlement.

1.      TiZA Defendants' Motion for Summary Judgment (Doc. No. [521]) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

    a.      Plaintiff's claims against defendants Mohammed Farid, Moira

Fahey, and Mona Elnahrawy are **DISMISSED** insofar as they are asserted

against them in their individual capacities.

    b.      Plaintiff's claim for a refund of student aid is **DISMISSED**

insofar as it is as asserted against defendants Asif Rahman, Mahrous

Kandil, Mona Elnahrawy, Moira Fahey, and Mohammed Farid.

2.      Islamic Relief's Motion for Summary Judgment on Cross-Claim for

Indemnification as Against TiZA (Doc. No. [509]) is **GRANTED IN PART**.

    a.      The portion of Islamic Relief's motion directed at its

cross-claim for indemnification is **GRANTED** in that the Court finds that

Islamic Relief is entitled to indemnification under the Contract.

    b.      The Court defers ruling on the issue of whether the settlement

between Islamic Relief and Plaintiff was reasonable and made in good faith

and Islamic Relief's request under Rule 54(b) pending the motion for

confirmation of settlement.

3.      The Commissioner's Motion for Summary Judgment as to Plaintiff's Claim

and on Cross-Claim for Indemnification as Against TiZA (Doc. No. [507]) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

    a.      The portion of the Commissioner's motion directed against

Plaintiff's claims is **DENIED WITHOUT PREJUDICE AS MOOT**.

        b.      The portion of the Commissioner's motion directed at its

cross-claim for indemnification is **GRANTED**.


Dated:  April 20, 2011                <u>s/Donovan W. Frank</u>
                                      DONOVAN W. FRANK
                                      United States District Judge